**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ELLIPTIC WORKS LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. _____ |
| | : | |
| FLUIDRA SA, FLUIDRA NORTH AMERICA | : | JURY TRIAL DEMANDED |
| LLC, FLUIDRA USA LLC, ZODIAC POOL | : | |
| SOLUTIONS NORTH AMERICA LLC, | : | |
| ZODIAC POOL SYSTEMS LLC, and | : | |
| ZODIAC POOL CARE EUROPE SAS, | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff Elliptic Works LLC ("Plaintiff" or "Elliptic"), by and through its attorneys, hereby files this Complaint against Fluidra SA ("Fluidra Spain"), Fluidra North America LLC ("Fluidra North America"), Fluidra USA LLC ("Fluidra USA"), Zodiac Pool Solutions North America LLC ("Zodiac North America"), Zodiac Pool Systems LLC ("Zodiac USA"), and Zodiac Pool Care Europe SAS ("Zodiac Europe") (collectively "Defendants" or the "Fluidra Companies") for patent infringement, breach of contract, and misappropriation of trade secrets, alleging as follows:

1.      This action concerns Defendants' theft of Elliptic's intellectual property. Elliptic invented a means to communicate through visual light signals with robots that operate while submerged in swimming pools.  Elliptic filed a patent application based on its technology, and while prosecution of the application was pending, shared its concepts with some of the Defendants under a non-disclosure agreement while exploring a potential collaboration. Instead of collaborating, the Defendants pretended not to be interested, then filed a patent application of

their own based on Elliptic's methods, while using those methods to manufacture their own version of the communication system, which they now sell for hundreds of millions of dollars in revenue every year.  Elliptic's patent has issued, and it seeks to recover from Defendants for misappropriating its trade secrets and infringing its patent.

2.      In particular, Elliptic is suing for infringement of United States Patent No. 12,134,913 under the Patent Act, 35 U.S.C. § 271, based on the unauthorized commercial manufacture, use, importation, offer for sale, and sale of the Polaris FREEDOM Plus cordless robotic cleaner (the "FREEDOM Plus" or the "Accused Product") in the United States by Fluidra Spain, Fluidra North America, Fluidra USA, Zodiac North America, and Zodiac USA (collectively, the "Infringement Defendants").

3.      Elliptic also seeks to recover for Defendant Zodiac USA's breach of contract in respect of a certain Mutual Nondisclosure Agreement executed by Elliptic and Zodiac USA, and for Defendants Zodiac USA, Zodiac Europe, and Fluidra Spain's (collectively, the "Trade Secret Defendants") misappropriation of Elliptic's trade secrets in violations of the federal Defend Trade Secrets Act and Delaware's Uniform Trade Secret Act.

## JURISDICTION

4.      This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has supplemental jurisdiction over the subject matter of counts II (Breach of Contract) and IV (Violation of Delaware Uniform Trade Secrets Act) under 28 U.S.C. § 1367.

6.      Personal jurisdiction over Defendants Fluidra North America, Fluidra USA, Zodiac North America, and Zodiac USA is proper in this District because these are Delaware

2

limited liability companies and therefore subject to the general jurisdiction of the courts of Delaware.

7.      Personal jurisdiction over Defendants Fluidra Spain and Zodiac Europe is proper in this District under Federal Rule of Civil Procedure 4(k)(2) because at least one of Elliptic's claims against them arises under federal law, they are not subject to the jurisdiction of any state court of general jurisdiction, and together with the other Fluidra Companies they market, manufacture, import, and sell a wide variety of swimming pool systems and products throughout the United States, including  the Polaris FREEDOM Plus cordless robotic cleaner.

8.      On information and belief, Fluidra Spain exercises sufficient control over Fluidra North America, Fluidra USA, Zodiac North America, and Zodiac USA to establish an agency relationship.

9.      On information and belief, Fluidra Spain and Zodiac Europe design, manufacture, distribute, market, sell, or influence another Fluidra Company's design, manufacture, distribution, marketing, or sales of products into the US.

10.     Moreover, Zodiac Europe, as a wholly-owned subsidiary of Fluidra Spain, is the assignee of well over 100 United States patents and patent applications, many of which cover products that the Fluidra Companies market, manufacture, import, and sell throughout the United States.

## VENUE

11.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c)(3), and 1400(a).

## THE PARTIES

12.     Plaintiff Elliptic is a New York limited liability company with its principal place of business at 54 Dundee Lane, Southampton, New York 11968.

13.     Elliptic was formed in 2015 to develop innovative technologies primarily for the swimming pool and spa industry.  Since its formation, Elliptic has been conducting research to evaluate the potential of underwater visual light communication ("VLC") for sensors, lights, pumps, robots, and other submerged pool devices, to introduce the Internet-of-Things ("IoT") and cloud services to the pool industry.

14.     Sean Walsh ("Walsh") is a co-founder of Elliptic and a named inventor on certain Elliptic patent applications.

15.     John Bouvier ("Bouvier") is a co-founder of Elliptic and a named inventor on certain Elliptic patent applications.

16.     Stefan Mangold ("Mangold") is a partner in Elliptic, holds a Ph.D. in electrical engineering, and has been a member of the Elliptic technical team since at least January 1, 2019.

17.     Eric Eckstein ("Eckstein") is a partner in Elliptic, holds a B.S. in electrical and computer engineering, and has been a member of the Elliptic technical team since at least January 1, 2019.

18.     Defendant Fluidra Spain is a "multinational group listed on the Spanish Stock Exchange" with "long-standing experience in developing innovative products and services in the global residential and commercial pool market."  *See* https://www.fluidra.com/about-fluidra (last visited February 1, 2025).  Of relevance to the present dispute, Fluidra Spain seeks to innovate in the areas of robotics and IoT as applied to pool connectivity and remote interaction with pool systems.  *Id*.

19.     Defendant Fluidra North America is a Delaware limited liability company which may be served through its registered agent Corporation Service Company, 251 Little Falls Drive,

Wilmington, Delaware 19808.  On information and belief, Fluidra North America is a wholly owned subsidiary of Defendant Fluidra Spain.

20.    Defendant Zodiac North America is a Delaware limited liability company which may be served through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Zodiac North America is a wholly owned subsidiary of Defendant Fluidra Spain.  Exhibit 1 (Appendix 1 to 2023 Annual Financial Report of Fluidra), p. 57.

21.    Defendant Fluidra USA is a Florida limited liability company which may be served through its registered agent Corporation Service Company, 1201 Hays Street, Suite #1110, Tallahassee, Florida 32301-3056.  Fluidra USA is a wholly owned subsidiary of Defendant Zodiac North America.  Exhibit 1, p. 57.

22.    Defendant Zodiac USA is a Delaware limited liability company which may be served through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.  Zodiac USA is a wholly owned subsidiary of Defendant Zodiac North America.  Exhibit 1, p. 57.

23.    Defendant Zodiac Europe is domiciled in Bron (France) and is engaged in the distribution and sale of pool-related products and accessories.  Zodiac Europe is a wholly owned subsidiary of Defendant Fluidra Spain. Exhibit 1, p. 58.

24.    Zodiac Europe is the assignee of U.S. Patent Application No. 17/395,584 (the "'584 Application").  Exhibit 2.  On information and belief, Zodiac Europe has licensed rights under the '584 Application to one or more of the other Fluidra Companies.

## ELLIPTIC'S TRADE SECRETS AND
## THE RELATIONSHIP BETWEEN THE PARTIES

25.    Elliptic's research into underwater visual light communication and its applications has resulted in the accumulation by Elliptic of a significant body of information with independent economic value to Elliptic by virtue of not being generally known to other persons. Elliptic has from its inception taken reasonable steps to secure and maintain the secrecy of its confidential information and trade secrets, including the execution of confidentiality and nondisclosure agreements by its members and agents, and in transactions with third parties where confidential information is implicated.  Elliptic has and continues to limit access to its confidential and trade secret information by, among other reasonable means, maintaining its files on computers and servers which require passwords or credentials to access them, such that only Elliptic's members and agents may do so.

26.    Elliptic filed patent application PCT/US16/62602 (the "'602 Application") on November 17, 2016.  The '602 Application names Sean Walsh and John Bouvier as inventors. The claims of the '602 Application are drawn to a visual light communication system for a pool system.

27.    Elliptic first entered into discussions about forming a relationship to develop pool system control technologies with representatives of Zodiac USA on or about July of 2016.  Early discussions were by telephone between Walsh (on behalf of Elliptic) and David Goldman of Zodiac USA ("Goldman").

28.     Elliptic and Zodiac USA entered into a Mutual Nondisclosure Agreement on

January 18, 2017 (the "NDA"). The fully executed NDA is attached hereto and incorporated by

reference.[1] Exhibit 3 (Elliptic/Zodiac USA NDA).

29.     The NDA bars both the use and disclosure of the other Party's Confidential

Information:

> 3. Non-use and Non-disclosure. Each Party agrees not to use any
> Confidential Information of the other Party for any purpose except
> to (i) engage in discussions concerning the Business Opportunity;
> (ii) evaluate the Business Opportunity; and (iii) perform its services
> or meet its obligations to the other Party related to the Business
> Opportunity. Each Party agrees not to disclose any Confidential
> Information of the other Party …

Exhibit 3. The NDA further bars use or disclosure of Confidential Information for up to three

years after its receipt:

> 10. Term. This Agreement will be valid for two (2) years from the
> Effective Date stated herein. The obligations of each receiving Party
> under this Agreement shall survive until such time as all
> Confidential Information of the other Party disclosed hereunder
> becomes publicly known and made generally available through no
> action or inaction of the receiving Party, but in no event more than
> three (3) years after the last disclosure of Confidential Information
> under this Agreement.

*Id*. The NDA is binding on the "Parties and their respective successors, heirs, legal

representatives and permitted assigns." *Id*., Sec. 14.

30.     Subsequent to the execution of the NDA, on or about April 26, 2017 Goldman

sent an email to Walsh confirming Zodiac USA' interest in discussions with Elliptic.

---

[1] At the time, Zodiac USA was organized in Delaware as Zodiac Pool Systems, Inc. Zodiac
USA converted to a Delaware LLC on or about September 30, 2017, prior to its merger with
Zodiac North America/Fluidra SA on July 2, 2018.

31.     On August 4, 2017, Walsh sent an email to Goldman attaching an agenda for a proposed in-person meeting and demonstration of Elliptic's developed technology.  In response, Goldman confirmed that he and Kevin McQueen, Zodiac USA' Executive Vice President for Global Innovation ("McQueen"), would attend, and would be open to discussing an engagement with Elliptic under which Elliptic would perform basic innovation work in collaboration with Zodiac USA.

32.     Walsh and Eckstein created, and on or about August 28, 2017 finalized a presentation including among other things a slide deck, containing confidential information including Elliptic's trade secrets relating to a light network that could transmit data from transmitted light code compiled from sources not in direct alignment. They described a communications network that could seamlessly transmit data in and out of a fluid environment, wirelessly and without a requirement of point-to-point transmission.  The presentation materials were clearly labeled "Confidential Property of Elliptic Works LLC." Exhibit 4 (Presentation slide deck of Sept. 15, 2017) (filed separately UNDER SEAL).

33.     The '602 Application, which names Walsh and Bouvier as inventors, was developed and conceived using Elliptic's same confidential and trade secret information, derived from the research and innovation of Walsh and Bouvier.

34.     On September 15, 2017, Goldman and McQueen met with Walsh and the Elliptic team at Elliptic's training facility in the J. Tortorella Service Department located at 296 West Montauk Highway in Hampton Bays, New York.

35.     At the September 15, 2017 meeting, Bouvier led a presentation to Goldman and McQueen of the then-current state of Elliptic's technology related to VLC networking and discussed its potential application to a wide range of novel consumer and industrial products and

devices. Walsh and Eckstein made a physical demonstration of Elliptic VLC technology. The content of the presentation included the aforementioned slide deck and other disclosures of Elliptic's trade secrets, including use of VLC in robotic pool cleaners, which were delivered to Goldman and McQueen subject to the NDA. Exhibit 4.

36.    Goldman and McQueen departed the September 15, 2017 meeting with copies of Elliptic's confidential and trade secret material.

37.    On October 12, 2017, Goldman emailed Walsh to relate that Zodiac USA could not proceed with a relationship with Elliptic, because it lacked "the budget or capacity to chew on anything else," while leaving the possibility of a future relationship open.

38.    On information and belief, sometime after the September 15, 2017 presentation and prior to August 6, 2020, one (or more) of Goldman, McQueen, and Zodiac USA CEO Bruce Brooks ("Brooks") provided information and materials disclosed by Elliptic at the September 15, 2017 presentation to one or more individuals at Zodiac Europe and/or Fluidra Spain, in breach of the NDA and in violation of U.S. federal and Delaware state trade secret protection laws.

39.    On June 15, 2018, Elliptic filed U.S. Application No. 16/063,023 (the "'023 Application"), the national phase of the PCT '602 Application.

40.    On July 2, 2018, Zodiac USA merged with Zodiac North America, which itself became a subsidiary of Fluidra Spain as part of a larger merger transaction between Fluidra Spain and the Zodiac Group of companies.

41.    On or about November 1, 2019, David Tapias, the R&D director of Fluidra Spain ("Tapias") contacted Walsh seeking to connect and inquire about Elliptic's progress in its work since Elliptic and Zodiac last communicated. On information and belief, Tapias's outreach was prompted by McQueen.

42.    Walsh replied to Tapias by email on December 5, 2019, providing a link to a collection of short videos, and attaching an excerpt of Elliptic's then-current business plan. Tapias confirmed receipt of the videos and documents the same day.  The videos showed control of a small robotic cleaner using Elliptic's prototype VLC system which transmitted commands using light from a pool lighting fixture which Walsh held by hand, and demonstrated proof of concept of VLC communication with and control of the robot in air, under water, and across the air/water interface using a handheld device.

43.    On January 16, 2020 Walsh emailed Tapias seeking to continue discussions about "developing a working relationship with Elliptic Works and Fluidra."  On January 17, 2020 Tapias responded "We are interested, for sure!, and I'm working on that and I expect to give you an answer with the next step during coming weeks. During next weeks we have our technology team to discuss it."

44.    Walsh emailed Tapias to follow up on February 6, 2020, and Tapias replied on February 12 with a proposal for another call, to include an expert from Fluidra Spain's French subsidiary Zodiac Europe, Mehdi Chafik ("Chafik"), with whom Tapias had already shared Elliptic's proof of concept videos.

45.    On February 26, 2020 Walsh, along with Mangold and Eckstein, participated in a call with Zodiac Europe representatives, including Chafik.  During this call, Walsh, Mangold, and Eckstein answered multiple questions from Chafik regarding the VLC network technology that Walsh, Mangold, and Eckstein had developed in their work at Elliptic, and how that technology could be implemented in the prototype robot that Zodiac Europe and Fluidra Spain desired to construct.  Zodiac Europe through Chafik also expressed interest on the call in Elliptic's intellectual property protection efforts and IP portfolio.

46.     On March 3, 2020, Chafik forwarded to Elliptic a set of specifications for a desired prototype VLC-controlled robot.

47.     On March 5, 2020, Eckstein sent Chafik an email with some technical questions on Chafik's proposed specifications, and additionally included statements addressed to Elliptic's proprietary technology:

> NDA: We need to update our NDA with you.
>
> EW ewVLC: As this project will use EW proprietary technology, and we both would like to get moving on this quickly for the deadline, would it be acceptable to stipulate in the Agreement that no commercial terms are transferred through the Agreement, and that should both parties desire a separate commercial agreement will be executed for those technologies?

48.     Chafik responded on March 6, 2020 by annotating Eckstein's email thusly:

> NDA: We need to update our NDA with you. **-> Sure, if you have an NDA doc, Rémi can sign it quickly.**
>
> EW ewVLC: As this project will use EW proprietary technology, and we both would like to get moving on this quickly for the deadline, would it be acceptable to stipulate in the Agreement that no commercial terms are transferred through the Agreement, and that should both parties desire a separate commercial agreement will be executed for those technologies? **-> i would have to refer to Rémi and David on that but it seems completely** [*sic*] **normal.**

49.     On March 6, 2020, Walsh forwarded to Chafik a new nondisclosure agreement. Exhibit 5 (March 6, 2020 NDA draft).

50.     On March 9, 2020, Walsh forwarded to Chafik a Work Plan and corresponding Agreement for production by Elliptic of a VLC-controlled robotic pool cleaner prototype. Exhibit 6 (Work Plan V1 of March 9, 2020) (filed separately UNDER SEAL).

51.     On March 11, 2020, Chafik confirmed receipt of the NDA, Agreement, and Work Plan.

11

52.     On March 12, 2020, Tapias emailed Walsh that the emergent and developing

situation with the worldwide coronavirus pandemic was changing Fluidra Spain's outlook: "from

now on we have to relax our expectations due to global situation and we are not in a position to

invest such amount of money to carry out the POC. Moreover, the problem with the Coronavirus

is affecting our calendar of events scheduled for this year, and for this reason we are not in such

a hurry."

53.     On March 26, 2020, Tapias emailed Walsh again:

> Here in Spain the situation (as weel as in Europe) is going worst and
> many companies will close during a period of time. In this scenario
> we are forced to slow down most of our non urgent activities. We
> hope that in a couple of months we can start to recover a normal
> speed. Let's postpone our conversations till end of may. Meanwhile,
> we could at least we could take a look on your patents related to your
> technology. Cld you please give us the available info to do it? [*sic*
> throughout]

54.     On March 30, 2020, Walsh sent Tapias a copy of U.S. Publication 20180371778

and a copy of allowed patent claims for the '023 Application. Tapias did not respond, and

Elliptic received no further communications from any of the Fluidra Companies.

55.     On August 6, 2020 Zodiac Europe filed U.S. Provisional Application No.

63/061,898 (the "'898 Provisional"). Exhibit 7 (U.S. Provisional Application No. 63/061,898).

The '898 Provisional discloses

> Devices, systems, and methods for wirelessly communicating
> underwater with equipment such as, but not necessarily limited to,
> automatic swimming pool cleaners (APCs) are detailed. Such
> communication avoids any need for conventional wired
> communication with the APCs. At least certain of the devices may
> be hand-held and capable of having at least portions immersed in
> water in normal use. The devices preferably do not use radio
> frequency (RF) signals to communicate with APCs, instead
> employing light-based or other signal types.

*Id.*

56.     On information and belief, at least part of the subject matter disclosed in the '898 Provisional, including but not limited to concepts for visual light-based underwater wireless communication (or VLC) for control of pool systems and components, was taken from Elliptic's confidential information and trade secrets disclosed 1) to Goldman and McQueen at the September 15, 2017 presentation by Elliptic, and 2) during the February 26, 2020 call with Chafik, in breach of the NDA and in violation of U.S. federal and Delaware state trade secret protection laws.  On information and belief, at least part of the subject matter disclosed in the '898 provisional was conceived and reduced to practice by Walsh, Eckstein, and/or Mangold.

57.     Zodiac Europe followed its filing of the '898 Provisional with the filing of nonprovisional U.S. utility patent Application No. 17/395,584 (the "'584 Application") one year later, on August 6, 2021.  On February 10, 2022, the '584 Application was published as U.S. Patent Publication No. 2022/0042335.  Exhibit 2.

58.     Independent Claim 12 of the '584 Application as published recites

> A cleaning system for a swimming pool, the cleaning system comprising:
> an automatic swimming pool cleaner configured to operate in water within the swimming pool; and
> a control device comprising a housing, the housing comprising a communication region, <u>wherein the control device is configured to operate and wirelessly communicate with the automatic swimming pool cleaner through at least one of air or water using light-based signals,</u> and
> wherein the control device is a hand-held device.

Exhibit 2 (emphasis supplied).

59.     On information and belief, at least part of the subject matter disclosed and claimed in the '584 Application, including but not limited to the concepts for visual light-based underwater wireless communication (or VLC) for control of pool systems and components recited in at least Claims 4, 9, and 12-40, was taken from Elliptic's confidential information and

trade secrets disclosed to Goldman and McQueen at the September 15, 2017 presentation by Elliptic, in breach of the NDA and in violation of U.S. federal and Delaware state trade secret protection laws.

60.     Walsh contributed extensively to the conceptualization of the VLC networking technology contained in Elliptic's trade secrets.  Because at least part of the subject matter disclosed and claimed in the '584 Application, including but not limited to the concepts for visual light-based underwater wireless communication (or VLC) for control of pool systems and components recited in at least Claims 1, 4, 9, and 12-40[2], was taken from Elliptic's confidential information and trade secrets disclosed to Goldman and McQueen at the September 15, 2017 presentation by Elliptic, a presentation that was a cooperative and collaborative exchange of information between Elliptic and Zodiac USA, at least Walsh and Bouvier in fact contributed to the conception of the invention described in at least Claims 1, 4, 9, and 12-40 of the '584 Application.

61.     Mangold and Eckstein have also both contributed extensively to the conceptualization of the VLC networking technology contained in Elliptic's trade secrets. During the February 26, 2020 call with Zodiac Europe and Fluidra Spain representatives, Walsh, Mangold, and Eckstein answered multiple questions from Chafik and his team regarding the VLC network technology that Walsh, Mangold, and Eckstein had developed in their work at Elliptic, and how that technology could be implemented in the prototype robot that Zodiac Europe and Fluidra Spain desired to construct.  The call was a cooperative and collaborative exchange of information between Elliptic and Zodiac Europe in pursuit of a future collaborative

---

[2] Claim numbers recited in paragraph 52 are the claims as published in U.S. Patent Publication No. 2022/0042335, attached hereto as Exhibit 2.

14

business relationship. Because at least part of the subject matter disclosed and claimed in the

'584 Application, including but not limited to the concepts for visual light-based underwater

wireless communication (or VLC) for control of pool systems and components recited in at least

Claims 4, 9, and 12-40, was taken from Walsh, Mangold, and Eckstein's teaching and

disclosures made to Zodiac Europe during the call,  each of Walsh, Mangold, and Eckstein in

fact contributed to the conception of the invention described in at least Claims 4, 9, and 12-40 of

the '584 Application.

## THE PATENT-IN-SUIT

62.     The asserted patent is U.S. Patent No. 12,134,913 (the "'913 Patent"), entitled

"System for visual light communications and related methods," which was duly and legally

issued by the United States Patent and Trademark office on November 5, 2024, and names Sean

Walsh and John Bouvier as inventors.  A copy of the '913 patent is attached hereto as Exhibit 8.

63.     The '913 patent includes claims to systems to monitor and control the operation

of pool systems including pool components and devices, and in particular to such systems that

include a visual light communication system.

64.     The '913 patent is valid and enforceable.

65.     Elliptic is the owner of the entire right, title, and interest in the '913 patent.

66.     Elliptic practices its technology and has the right to bring this action to recover

damages for any current or past infringement of the patents-in-suit. Elliptic has never granted to

any of the Fluidra Companies a license to practice the patent-in-suit.

**DEFENDANT'S INFRINGING ACTIVITIES AND PRODUCTS**

67.     The Infringement Defendants have and continue to infringe the '913 Patent by making, using, selling, offering for sale, and importing into the United States the Polaris FREEDOM Plus in the United States.

68.     The Infringement Defendants market the FREEDOM Plus through their Polaris brand. *See* https://www.fluidra.com/brands/polaris.

69.     On information and belief, the Infringement Defendants import the FREEDOM Plus from their manufacturer in Malaysia.  Exhibit 9 (FREEDOM Plus box label).

70.     The FREEDOM Plus is a robotic, cordless robotic pool cleaner which operates under water, and is controlled remotely by a handheld device which communicates with the robotic cleaner using VLC (or "LiFi").  According to the Polaris website, the "FREEDOM Plus comes with a hand-held remote that uses cutting-edge LiFi technology to communicate with the cleaner underwater — giving you the power to start/stop, direct movement and easily remove the cleaner by deploying the Easy Lift System with just one press of a button." *See* https://www.polarispool.com/en/products/pool-cleaners/robotic-pool-cleaners/polaris-freedom-plus.

71.     The FREEDOM Plus infringes the claims of the '913 Patent, including, but not limited to, claims 1, 9, 16, and 24 of the '913 Patent, as it includes each and every element required in claims 1, 9, 16, and 24, as set forth in detail in the infringement chart attached hereto, the contents of which are incorporated herein by reference.  Exhibit 10 (Infringement chart).

72.     Defendant has been and is inducing infringement of the '913 Patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import the FREEDOM Plus. The FREEDOM Plus is available on AMAZON.com.  https://www.amazon.com/Polaris-

FREEDOM-Plus-Cordless-Charging/dp/B0CWSB8MPF?ref_=ast_sto_dp&th=1 (last visited February 7, 2025). The Fluidra and Polaris websites identify various dealers and distributors in the United States, including the Wilmington Delaware vicinity, for the FREEDOM Plus. Exhibit 11 (Polaris Dealer listings near ZIP code 19801).

73.    Leslie's Poolmart in Delaware offers the FREEDOM Plus by both delivery and ship-to-store. Exhibit 12 (Leslie's Poolmart Delaware).

74.    According to the Fluidra website, Swift Pools Inc. in Newark, Delaware offers a "Try Me" program where customers can "test drive" the latest Polaris robotic pool cleaners. Exhibit 13 (Swift Pools Inc. Delaware).

75.    The Infringement Defendants have known of the existence of the '913 Patent, and their acts of infringement have been willful and in disregard for the '913 Patent, without any reasonable basis for believing that they had a right to engage in the infringing conduct.

76.    Defendant Zodiac USA has been aware of the nature of Elliptic's research and development efforts, which underlie the '913 Patent, since at least the presentation of September 15, 2017. Moreover, Tapias of Fluidra Spain was provided a copy of U.S. Publication 20180371778 and a copy of allowed patent claims for the '023 Application, which shares the same specification with the '913 Patent, on March 30, 2020.

77.    On October 30, 2024, John Tortorella of Elliptic notified Tapias of Fluidra Spain by email of the impending November 5, 2024 allowance of the '913 Patent. In his email, Tortorella gave notice to Tapias of Fluidra's infringement of multiple claims of the '913 Patent by sale of the FREEDOM Plus robotic cleaning device and demanded Fluidra stop its infringing activity. Tortorella further put Tapias on notice of "Fluidra's unauthorized use and exploitation of EW's confidential information and trade secrets."

78.     Fluidra Spain's patent counsel responded to Tortorella on November 21, 2024, seeking additional information and specifically requesting claim charts detailing Elliptic's infringement contentions.

79.      On December 6, 2024, Elliptic responded, providing an analysis of the infringement of the '913 Patent claims by the FREEDOM Plus, including the infringement chart attached hereto as Exhibit 10.  Despite having Elliptic's claim chart, the Infringement Defendants continued to willfully infringe the '913 Patent.

80.     The Infringement Defendant's infringement has been, and continues to be knowing, intentional, and willful.

81.     The Infringement Defendant's acts of infringement of the '913 Patent have caused and will continue to cause Elliptic damages for which Elliptic is entitled to compensation pursuant to 35 U.S.C. § 284.

82.     The Infringement Defendant's acts of infringement of the '913 Patent have caused and will continue to cause Elliptic immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.  Elliptic has no adequate remedy at law.

## COUNT I – PATENT INFRINGEMENT
### (against Fluidra Spain, Fluidra North America, Fluidra USA, Zodiac North America, and Zodiac USA)

### Direct Infringement

83.     Plaintiff repeats and realleges paragraphs 1 through 82 hereof, as if fully set forth herein.

84.     The Infringement Defendants have directly infringed and continue to directly infringe under 35 U.S.C. § 271(a) one or more claims of the '913 patent either literally and/or

under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States the FREEDOM Plus robotic cleaner that infringes one or more claims of the '913 patent.

85.    The Infringement Defendants import into the United States the FREEDOM Plus robotic cleaner pool devices manufactured in Malaysia.  Exhibit 9.

86.    Third parties, including the Infringement Defendants customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '913 patent, either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale the FREEDOM Plus robotic cleaner in the United States that infringes one or more claims of the '913 patent, as described in detail  above.

87.    The Infringement Defendants had prior knowledge and notice of the '913 patent and its infringement through prior correspondence between John Tortorella of Elliptic and Fluidra Spain, from counsel for Elliptic to Fluidra Spain, and through the filing of the Complaint in this action.

88.    Fluidra Spain through its prior correspondence with counsel for Elliptic, provided no facts or basis why the FREEDOM Plus robotic cleaner avoids the claims of the '913 patent and the Infringement Defendants continue to make, use, offer for sale, sell, and import into the United States, the FREEDOM Plus robotic cleaner in the United States despite an objectively high likelihood that these activities infringe one or more claims of the '913 patent.

**Induced Infringement**

89.    The Infringement Defendants have induced infringement and continue to induce infringement under 35 U.S.C. § 271(b).

90.     The Infringement Defendants have directly infringed one or more claims of the '913 patent by making, using, offering for sale and selling the FREEDOM Plus robotic cleaner to customers as described in detail in paragraphs 67 to 74, above.

91.     The Infringement Defendants have actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally, induce infringement of the '913 patent by selling or otherwise supplying the FREEDOM Plus robotic cleaner, with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States, for their intended purpose to infringe the '913 patent, and with the knowledge and intent to encourage and facilitate infringement through the dissemination of the FREEDOM Plus robotic cleaner.

92.     Upon information and belief, the Infringement Defendants' sales representatives and distributors, over whom the Infringement Defendants exert control and direction, provide assistance and instruction in connection with how to use the FREEDOM Plus robotic cleaner in an infringing manner and with the intent that the FREEDOM Plus robotic cleaner operates so that it infringes the '913 patent.

**Willful Infringement**

93.     The Fluidra Companies generally, and Zodiac USA specifically, have been aware of Elliptic's existence and research in the pool system control industry since at least January 18, 2017, when Elliptic and Zodiac USA entered the NDA.

94.     On March 30, 2020, Walsh sent Tapias at Fluidra Spain a copy of U.S. Publication 20180371778, which shares the same specification as the '913 Patent, and a copy of allowed patent claims for the '023 Application.

95.    On October 30, 2024, John Tortorella of Elliptic notified Tapias of Fluidra Spain by email of the impending November 5, 2024 allowance of the '913 Patent.

96.    As described above in paragraph 79, at least by December 6, 2024, Fluidra Spain was put on express notice that the making, using, offering for sale and selling of the FREEDOM Plus robotic cleaner infringed certain claims of the '913 patent.

97.    Having had prior knowledge of the '913 patent, the Infringement Defendants knew or should have known that, without taking a license to the patents-in-suit, their actions continue to infringe one or more claims of the '913 patent. Therefore, the Infringement Defendants have willfully infringed the '913 patent and continue to do so.

98.    Elliptic has been and continues to be damaged by Fluidra Spain's infringement of the '913 patent.

## COUNT II – BREACH OF CONTRACT

### (against Zodiac USA)

99.    Plaintiff repeats and realleges paragraphs 1 through 98 hereof, as if fully set forth herein.

100.    The NDA is a binding written contract between Elliptic and Zodiac USA.  Exhibit 3.

101.    Elliptic has performed all its obligations under the NDA.

102.    Zodiac USA has breached its obligations under the NDA at least through its disclosure during the term of the NDA to one or more third parties, including but not limited to Defendants ZPEC and Fluidra Spain, of Elliptic's confidential information related to VLC networking and its potential novel applications and by filing patent applications related to VLC networking.

103. Elliptic has been damaged by Zodiac USA's breach of the NDA and disclosure to at least Fluidra Spain and Zodiac Europe of information that derives independent economic value to Elliptic by virtue of not being generally known to other persons.

## COUNT III – DEFEND TRADE SECRETS ACT - 18 U.S.C. § 1836

### (against Zodiac USA, Zodiac Europe, Fluidra Spain)

104. Plaintiff repeats and realleges paragraphs 1 through 103 hereof, as if fully set forth herein.

105. By misappropriating Elliptic's research into underwater visual light communications and its applications, the Trade Secret Defendants have violated the Defend Trade Secrets Act.

106. Defendant Zodiac USA has misappropriated Elliptic's trade secrets by improper disclosure in breach of the NDA. Zodiac Europe and Fluidra Spain have misappropriated Elliptic's trade secrets by improperly acquiring those trade secrets through ZPC's breach of contract, and improperly using those trade secrets in filing patent applications which do not properly attribute inventorship to one or both of Walsh and Bouvier.

107. Elliptic has been damaged by the Trade Secret Defendants' misappropriation of Elliptic's trade secrets.

## COUNT IV –DELAWARE UNIFORM TRADE SECRETS ACT - 6 *Del. C.* § 2001 *et seq*.

### (against Zodiac USA, Zodiac Europe, Fluidra Spain)

108. Plaintiff repeats and realleges paragraphs 1 through 107 hereof, as if fully set forth herein.

109.    By misappropriating Elliptic's research into underwater visual light communications and its applications, the Trade Secret Defendants have violated the Delaware Uniform Trade Secrets Act.

110.    Elliptic has been damaged by Defendants' misappropriation of Elliptic's trade secrets.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Elliptic Works LLC prays for judgment against Defendants Fluidra Spain, Fluidra North America, Fluidra USA, ZP Solutions, Zodiac USA, and Zodiac Europe, jointly and severally as follows:

A.    That Elliptic be awarded all damages adequate to compensate it for the Infringement Defendants' infringement of the patent-in-suit, such damages to be determined by a jury with pre-judgment and post-judgment interest;

B.    A judgment that the infringement was willful and that such damages be trebled pursuant to 35 U.S.C. § 284;

C.    An order preliminarily and permanently enjoining the Infringement Defendants and their officers, agents, servants and employees, privies, and all persons in concert or participation with them, from further infringement of the patent-in-suit;

D.    An order requiring the Infringement Defendants to recall the Accused Product from all third-party retailers and distributors, and to provide notice to all customers who have purchased the infringing products that the product infringes Elliptic's patent;

E.    Zodiac USA is in breach of the Elliptic/Zodiac USA NDA;

F.    That Fluidra Spain, Zodiac Europe, and Zodiac USA have violated the Defend Trade Secrets Act;

G.      That Fluidra Spain, Zodiac Europe, and Zodiac USA have violated the Delaware Uniform Trade Secrets Act;

H.      That Elliptic be awarded all damages adequate to compensate it for ZP System's breach of contract and the misappropriation by the Trade Secret Defendants of Elliptic's trade secrets under DTSA and DUTSA, including actual damages, unjust enrichment, and/or an award of reasonable royalties; and

I.      That Elliptic be awarded such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Elliptic Works LLC hereby demands a trial by jury on all issues so triable.


Dated: February 10, 2025

Respectfully submitted,

OFFIT KURMAN P.A.


By: */s/ Thomas H. Kramer*
    Thomas H. Kramer (DE # 6171)
    222 Delaware Avenue
    Ste. 1105
    Wilmington, DE 19801
    P: 302-351-0908
    Email:  tom.kramer@offitkurman.com


*Attorneys for Plaintiff Elliptic Works LLC*


4902-1564-7257, v. 1