IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELLIPTIC WORKS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | C.A. No. 25-160 (JFM) |
| FLUIDRA SA, FLUIDRA NORTH AMERICA | ) | |
| LLC, FLUIDRA USA LLC, ZODIAC POOL | ) | |
| SOLUTIONS NORTH AMERICA LLC, | ) | |
| ZODIAC POOL SYSTEMS LLC, and | ) | |
| ZODIAC POOL CARE EUROPE SAS, | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANTS ZODIAC POOL SYSTEMS LLC
AND ZODIAC POOL CARE EUROPE SAS＇S MOTION TO DISMISS COUNTS II-
IV OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com

*Attorneys for Defendants Fluidra North
America LLC, Fluidra USA LLC, Zodiac Pool
Solutions North America LLC, Zodiac Pool
Systems LLC, and Zodiac Pool Care Europe
SAS*

OF COUNSEL:

Steven D. Moore
Rishi Gupta
Cecelia A. Rivera
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
(415) 576-0200

Christopher S. Leah
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309
(404) 815-6500

September 26, 2025

## <u>TABLE OF CONTENTS</u>

**Page(s)**

NATURE AND STAGE OF THE PROCEEDINGS ................................................................ 1

SUMMARY OF THE ARGUMENT .................................................................................... 1

STATEMENT OF FACTS ................................................................................................... 4

    A.    The Parties ...........................................................................................................4

    B.    The Complaint's Allegations ...............................................................................4

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

    I.    PLAINTIFF FAILS TO STATE DTSA OR DUTSA CLAIMS. .....................................7

        A.    Plaintiff's Purported Trade Secrets are Disclosed in its Patents.................................8

        B.    Plaintiff Fails to Identify any Trade Secret with Sufficient Particularity. .................12

        C.    Plaintiff Fails to Plead Misappropriation. .................................................................14

    II.    PLAINTIFF'S CLAIMS UNDER DTSA AND DUTSA ARE BARRED BY STATUTE OF LIMITATIONS. ...............................................................................15

    III.    PLAINTIFF HAS PLED ITSELF OUT OF ITS BREACH OF CONTRACT CLAIM. ...............................................................................................................17

    IV.    PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE BARRED BY STATUTE OF LIMITATIONS. ..........................................................................................19

    V.    DISMISSAL WITH PREJUDICE IS APPROPRIATE BECAUSE AN AMENDMENT WOULD BE FUTILE. ....................................................................20

CONCLUSION ................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

*Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*,
    581 F. Supp. 2d 654 (D. Del. 2008)........................................................................15

*Apple Inc. v. Allan & Assocs. Ltd.*,
    445 F. Supp. 3d 42 (N.D. Cal. 2020) ...........................................................19, 20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................7, 15

*Battaglia Mgmt., Inc. v. Abramowicz*,
    2024 WL 3183063 (D. Del. June 26, 2024)...................................................7, 8, 9

*Beeney v. FCA US LLC*,
    2024 WL 3444488 (D. Del. July 17, 2024), *aff'd*, 2025 WL 2556242 (3d Cir.
    Sept. 5, 2025) .............................................................................................20

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................7

*Doe v. Princeton Univ.*,
    30 F.4th 335 (3d Cir. 2022) ...............................................................................7

*FinancialApps, LLC v. Envestnet, Inc.*,
    2020 WL 4569466 (D. Del. July 30, 2020), *report and recommendation
    adopted*, 2020 WL 5552456 (D. Del. Sept. 15, 2020) .........................................18

*Mallet & Co. Inc. v. Lacayo*,
    16 F.4th 364 (3d Cir. 2021) ........................................................................13, 14

*Oakwood Lab'ys LLC v. Thanoo*,
    999 F.3d 892 (3d Cir. 2021)..............................................................................8

*Ocimum Biosolutions (India) Ltd., Tr. of Ocimum Biosolutions Inc. v. LG Chem.
    Ltd.*,
    2022 WL 3354708 (D. Del. July 31, 2022) ........................................................15

*Ocimum Biosolutions (India) Ltd. v. LG Corp*,
    2021 WL 931094 (D. Del. Mar. 11, 2021) ............................................15, 17, 19

*Players Network, Inc. v. Comcast Corp.*,
    2015 WL 427909 (D. Nev. Feb. 2, 2015) ...........................................................18

*Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*,
    2020 WL 3508078 (D. Del. June 29, 2020)........................................2, 7, 12, 13

*Raza v. Siemens Med. Sols. USA Inc.*,
   607 F. Supp. 2d 689 (D. Del. 2009)...............................................................1, 9, 11, 12

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014)...............................................................................1, 15

*Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*,
   587 F.3d 1339 (Fed. Cir. 2009)...............................................................................9

**Statutes**

18 U.S.C. § 1836................................................................................................ *passim*

18 U.S.C. § 1839................................................................................................ *passim*

6 Del. C. § 2001 *et seq.*..........................................................................................7, 8

6 Del. C. § 2006 ................................................................................................3, 15

**Rules**

Fed. R. Civ. P. 12(b)(6).................................................................................. *passim*

Cal. Civ. Proc. Code § 337 ................................................................................20

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Elliptic Works, LLC ("Elliptic" or "Plaintiff") filed its Complaint against Defendants Fluidra SA, Fluidra North America LLC, Fluidra USA LLC, Zodiac Pool Solutions North America LLC, Zodiac Pool Systems LLC ("ZPS"), and Zodiac Pool Care Europe SAS ("ZPCE") (collectively, "Defendants") on February 10, 2025, asserting counts of: (I) Patent Infringement, (II) Breach of Contract, (III) Trade Secret Misappropriation under the Defend Trade Secrets Act ("DTSA"), and (IV) Trade Secret Misappropriation under the Delaware Trade Secrets Act ("DUTSA"). D.I. 2 ("Complaint"). Plaintiff has asserted Count I against all defendants except ZPCE, Count II against only ZPS, and Counts III and IV against ZPS, ZPCE, and Fluidra SA. Pursuant to Fed. R. Civ. P. 12(b)(6), ZPS moves to dismiss Count II, and ZPS and ZPCE move to dismiss Counts III and IV with prejudice because Plaintiff fails to state a claim for breach of contract or trade secret misappropriation under the DTSA or DUTSA.[1]

## SUMMARY OF THE ARGUMENT

1.    Plaintiff's allegations of trade secret misappropriation are insufficient to support a cause of action under the DTSA or DUTSA because its purported trade secrets are disclosed in its patents. Because a patent serves to "put the world on notice" as to what the patentee claims, any information disclosed in a patent cannot be a trade secret. *Raza v. Siemens Med. Sols. USA Inc.*, 607 F. Supp. 2d 689, 693 (D. Del. 2009) (citation omitted). Here, all of the alleged trade secrets are disclosed in at least (1) the asserted patent, U.S. Patent No. 12,134,913 ("'913 Patent"), and (2) International Publication No. WO 2017/087716 (the "'716 Publication"), discussed in the same presentation Plaintiff claims included its trade secrets.[2] Because Plaintiff's trade secret

---

[1] Plaintiff has not yet served Fluidra SA, and the remaining Defendants were dismissed. D.I. 31.
[2] Courts may consider "exhibits attached to the complaint and matters of public record" to decide a motion to dismiss. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). Here,

descriptions overlap directly with its asserted patent coverage and Plaintiff fails to describe its purported trade secrets with sufficient particularity to allege the existence of information that is separate and distinct from the public domain, Plaintiff fails to state a claim for trade secret misappropriation under the DTSA or DUTSA.

2.    Plaintiff's allegations of trade secret misappropriation also are insufficient to support a cause of action under the DTSA or DUTSA because they fail to identify the purported trade secrets at issue with sufficient specificity. Plaintiff relies on broad and generic categorical descriptions to identify its purported trade secrets—alleging that its purported trade secrets are "relating to" and include its "research into" communication systems that transmit data via light. D.I. 2 ¶¶ 32, 105, 109 (describing purported trade secrets as "*relating to* a light network that could transmit data from transmitted light code compiled from sources not in direct alignment" and "Elliptic's *research into* underwater visual light communications and its applications." (emphasis added)). Both descriptions fail to identify the gravamen of the trade secret claim. *See Power Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*, 2020 WL 3508078, at *3 (D. Del. June 29, 2020) (finding recital of "broad categories of information" failed to provide fair notice of the "gravamen" of the misappropriation claim). Despite filing a 24-slide presentation deck with its Complaint, Plaintiff fails to point specifically where its purported trade secrets lie, instead stating only its purported trade secrets are "include[ed]" somewhere in its slide deck. Further, Plaintiff makes no attempt to distinguish its purported trade secrets from the other intellectual property presented therein, such as three patent applications covering subject matter identical to Plaintiff's description of its purported trade secrets.

---

the '913 Patent is attached to the Complaint as Exhibit 8, and the '716 Publication is a matter of public record and attached hereto as Exhibit A.

3.      Plaintiff further fails to plead trade secret misappropriation because its sole basis for its claim of misappropriation under the DTSA is its allegation that ZPS disclosed information to its affiliated entities and Co-Defendants ZPCE and Fluidra SA in breach of an NDA between Plaintiff and ZPS. D.I. 2 ¶ 106. However, Plaintiff's own pleadings render implausible its contention that the information at issue required protection under an NDA or that any disclosure to ZPCE or Fluidra SA breached such an agreement. Plaintiff admits that it sent ZPCE a Work Plan and related materials (documents it now claims contain trade secrets and were filed under seal, *see* D.I. 4) under its NDA with ZPS without first executing an NDA with ZPCE or Fluidra SA. In fact, by asserting a breach of contract claim against ZPS based on ZPS' alleged disclosure of confidential information to its affiliates ZPCE or Fluidra SA, Plaintiff effectively concedes there was never an NDA between itself and ZPCE, meaning Plaintiff itself failed to take adequate steps to protect its alleged trade secrets. D.I. 2 ¶ 47. Plaintiff's DUTSA claim is even more threadbare, as it is based purely on conclusory allegations which are not enough to state a claim. D.I. 2 ¶ 109.

4.      Plaintiff's allegations of trade secret misappropriation are further insufficient to support a cause of action under the DTSA or DUTSA because the statute of limitations for each has long since expired. Under the DTSA and DUTSA, the statute of limitations is three years from the date the misappropriation was "discovered or by the exercise of reasonable diligence should have been discovered." 18 U.S.C. § 1836(d); 6 Del. C. § 2006. Plaintiff admits that it knew of the alleged misappropriation five years before it filed its Complaint. D.I. 2 ¶¶ 41, 44. Therefore, Plaintiff's trade secret claims expired over two years before the filing of its Complaint.

5.      Plaintiff fails to plead breach of contract through disclosure of allegedly confidential information by ZPS to its affiliates ZPCE or Fluidra SA. Once again, Plaintiff's own conduct shows its assertion of confidentiality is implausible. Plaintiff not only alleges it disclosed

the complete Work Plan and related materials to ZPCE before entering into any NDA with ZPCE or Fluidra SA, but Plaintiff also admits that no NDA between itself and ZPCE was ever in place, again despite communicating to ZPCE that "[w]e need to update our NDA with you" (D.I. 2 ¶ 47). With these contradictory allegations, Plaintiff pleads itself out of its breach of contract claim by failing to allege a true disclosure to "one or more third parties." D.I. 2 ¶ 102.

6.      Plaintiff's allegations of breach of contract are insufficient to support a cause of action because the statute of limitations to bring a breach of contract claim has expired.

## STATEMENT OF FACTS

### A.      The Parties

Plaintiff Elliptic is a New York limited liability company with its principal place of business in Southampton, New York. D.I. 2 ¶ 12. Plaintiff's Complaint describes four individuals from Elliptic that it alleges are central to this Action: Sean Walsh ("Walsh") and John Bouvier ("Bouvier"), the founders of Elliptic, and Stefan Mangold ("Mangold") and Eric Eckstein ("Eckstein") both members of the Elliptic technical team. D.I. 2 ¶¶ 14-17.

Plaintiff alleges that Fluidra SA is a "multinational group listed on the Spanish Stock Exchange," ZPS is a Delaware limited liability company, and ZPCE is domiciled in France. D.I. 2 ¶¶ 19, 22-23. Plaintiff names four individuals across these Defendants that it alleges are involved in Counts II, III, and IV in this Action: David Goldman of ZPS ("Goldman"); Kevin McQueen, described as ZPS' Executive Vice Presidence for Global Innovation ("McQueen"); David Tapias, described as the R&D director of Fluidra SA ("Tapias"); and Mehdi Chafik of ZPCE ("Chafik") D.I. 2 ¶¶ 27, 31, 41, 44.

### B.      The Complaint's Allegations

Plaintiff asserts that Defendants ZPS, ZPCE, and Fluidra SA (collectively, the "Trade Secret Defendants") misappropriated its purported trade secrets in violation of the DTSA and

DUTSA and also infringe the '913 Patent. D.I. 2. As to the trade secret claims, Plaintiff describes its alleged trade secrets only as "relating to a light network that could transmit data from transmitted light code compiled from sources not in direct alignment" and "research into underwater visual light communications and its applications." D.I. 2 ¶¶ 32, 105, 109. For the DTSA claim, the only act of misappropriation that Plaintiff asserts against ZPS is disclosure to its affiliates — ZPCE and Fluidra SA. D.I. 2 ¶ 106. For the DUTSA claim, Plaintiff's allegations are even more threadbare and conclusory. D.I. 2 ¶ 109

Specifically, Plaintiff alleges that on January 18, 2017, Plaintiff and ZPS entered an NDA governed by the laws of California having a term of two years. D.I. 2-3. Plaintiff alleges that ZPS breached its obligations under the NDA by disclosing Plaintiff's purported confidential information to its affiliate ZPCE and/or parent entity Fluidra SA "during the term of the NDA," but does not specify how or when that supposed disclosure allegedly took place. D.I. 2 ¶ 102; *see also* ¶ 38 (accusing ZPS of "provid[ing] information and materials disclosed by Elliptic at the September 15, 2017, presentation to one or more individuals at [ZPCE] and/or [Fluidra SA]").

Plaintiff included a 24-slide slide deck it allegedly shared with Goldman and McQueen of ZPS on September 15, 2017. D.I. 4 (Exhibit 4, hereafter "Slide Deck"). Plaintiff alleges that its purported trade secrets were disclosed within the Slide Deck, but does not specify where in the slide deck the alleged trade secrets are recited. *See* D.I. 2 ¶ 32; D.I. 4. In the Slide Deck, Plaintiff also references similar concepts publicly disclosed in Plaintiff's patent and patent applications. *Id.*

Plaintiff claims it engaged in discussions with ZPS until ZPS informed Plaintiff on October 12, 2017, that "it lacked 'the budget or capacity to chew on anything else.'" D.I. 2 ¶ 37. Plaintiff asserts that within the next year, ZPS became a subsidiary of Fluidra SA "as part of a larger merger transaction between Fluidra [SA] and the Zodiac Group of companies." D.I. 2 ¶ 40. Plaintiff alleges

5

that approximately 16 months after the merger, Tapias, the R&D director of Fluidra SA, at the request of McQueen of ZPS, inquired about Plaintiff's "progress in its work since Elliptic and [ZPS] last communicated." D.I. 2 ¶ 41. Plaintiff contends it replied and on January 16, 2020, it was "seeking to continue discussions about 'developing a working relationship with Elliptic Works and Fluidra.'" D.I. 2 ¶¶ 42–43. Following this communication, Plaintiff asserts that Tapias of Fluidra SA proposed holding another call with Plaintiff to include Chafik from ZPCE. D.I. 2 ¶ 44. The parties are alleged to have subsequently engaged in discussion, including Plaintiff "answer[ing] multiple questions from Chafik regarding the VLC network technology that Walsh, Mangold, and Eckstein had developed in their work at Elliptic." D.I. 2 ¶ 45.

On March 5, 2020, months after dialogue between Fluidra SA and Plaintiff allegedly began, Plaintiff told Chafik of ZPCE that "**[w]e need to update our NDA with you.**" D.I. 2 ¶ 47 (emphasis added). ZPCE allegedly agreed to sign an NDA and Plaintiff asserts it forwarded a new agreement. D.I. 2 ¶¶ 48–49. However, before receiving a signed NDA, Plaintiff alleges it forwarded ZPCE "a Work Plan and corresponding Agreement for production by Elliptic of a VLC-controlled robotic pool cleaner prototype." D.I. 2 ¶ 50 (The Work Plan VI, *see* D.I. 4). On March 11, 2020, ZPCE allegedly confirmed receipt of the Work Plan, Agreement, and NDA. D.I. 2 ¶ 51. Following this, on March 12, 2020, Fluidra SA allegedly conveyed to Plaintiff that "the worldwide coronavirus pandemic was changing Fluidra Spain's [Fluidra SA's] outlook" and that the parties should "postpone [their] conversations till end of may" given "in Spain the situation (As weel [sic] as in Europe) is going [sic] worst [sic] and many companies will close during a period of time" and they "are forced to slow down most of [their] non urgent activities." D.I. 2 ¶¶ 52–53.

## <u>LEGAL STANDARD</u>

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citation omitted). The complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "requires 'plausibly suggesting' facts sufficient to 'draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (first quoting *Iqbal*, 556 U.S. at 678; and then citing *Twombly*, 550 U.S. at 557). Labels, conclusions, and "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

The plaintiff in an action for misappropriation of trade secrets must "identify its alleged trade secrets with a 'reasonable degree of precision and specificity . . . such that a reasonable jury could find that plaintiff established each statutory element of a trade secret.'" *Battaglia Mgmt., Inc. v. Abramowicz*, 2024 WL 3183063, at *3 (D. Del. June 26, 2024) (alteration in original) (citation omitted). Courts are "not obligated to accept as true 'bald assertions,' 'unsupported conclusions and unwarranted inferences,' or allegations that are 'self-evidently false.'" *Power Integrations*, 2020 WL 3508078, at *2 (internal citations omitted).

## ARGUMENT

### I.    PLAINTIFF FAILS TO STATE DTSA OR DUTSA CLAIMS.

Plaintiff brings its Third and Fourth Claims for Relief pursuant to the DTSA and the DUTSA. 18 U.S.C. § 1836; 6 Del. C. § 2001 *et seq*.

To state a DTSA misappropriation claim, a plaintiff must allege "(1) the existence of a trade secret, defined generally as information with independent economic value that the owner has

taken reasonable measures to keep secret, 18 U.S.C. § 1839(3); (2) that 'is related to a product or service used in, or intended for use in, interstate or foreign commerce[,]' *id.* § 1836(b)(1); and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret, *id.* § 1839(5)." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021). Plaintiff has failed to do so.

To state a DUTSA misappropriation claim, a plaintiff must allege "(1) the existence of a trade secret, which is information with independent economic value from not being generally known or ascertainable that the owner has taken reasonable measures to keep secret; and (2) misappropriation of that trade secret, which is the knowing improper acquisition, use, or disclosure of that trade secret." *Battaglia Mgmt.*, 2024 WL 3183063, at \*3 (D. Del. June 26, 2024); *see also* 6 Del. C. § 2001 *et seq.*; 18 U.S.C. §§ 1836(b)(1), 1839(3), (5). Plaintiff fails to do either one.

Although a DTSA misappropriation claim under *Oakwood* includes the additional element requiring the trade secret be "'related to a product or service used in, or intended for use in, interstate or foreign commerce'" (*Oakwood*, 999 F.3d at 905 (citing 18 U.S.C. § 1836(b)(1)), Courts in this District have analyzed DTSA and DUTSA claims together. *See Battaglia Mgmt.*, 2024 WL 3183063, at \*3 n.3 (treating DTSA and DUTSA claims as "substantially identical" for purposes of a Rule 12(b)(6) motion).

A.      **Plaintiff's Purported Trade Secrets are Disclosed in its Patents.**

To allege the first element of a misappropriation claim, Plaintiff must show a trade secret exists. *Battaglia Mgmt.*, 2024 WL 3183063, at \*3. This means Plaintiff must show that the subject matter of the purported trade secret is actually a trade secret: "(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the

disclosure or use of the information." 18 U.S.C. § 1839(3). However, Plaintiff cannot show that a trade secret exists, because Plaintiff's purported trade secrets are disclosed in its own patents.

"Public disclosure, that is the absence of secrecy, is fatal to the existence of a trade secret." *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009). Information disclosed in a patent cannot be a trade secret. *See Raza v. Siemens Med. Sols. USA Inc.*, 607 F. Supp. 2d 689, 693 (D. Del. 2009) ("*Patents serve to 'put the world on notice'* with respect to what the patentee claims to own; thus, any trade secret in a patent is no longer secret.") (citation omitted) (emphasis in original); *Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1355 (Fed. Cir. 2009) ("[i]t is well established that disclosure of a trade secret in a patent places the information comprising the secret into the public domain. Once the information is in the public domain and the element of secrecy is gone, the trade secret is extinguished and the patentee's only protection is that afforded under the patent law."). Here, Plaintiff acknowledges it applied for and received patents on the same subject matter as its purported trade secrets. *See e.g.*, D.I. 2, ¶ 33 (The `602 Application . . . was developed and conceived using Elliptic's same confidential and trade secret information."). Without a trade secret, Plaintiff fails to satisfy the first element of a misappropriation claim. *See Battaglia Mgmt., Inc. v. Abramowicz,* No. CV 23-615-GBW, 2024 WL 3183063, at *3 (D. Del. June 26, 2024) ("(1) the existence of a trade secret").

Specifically, Plaintiff describes its purported trade secret as "relating to a light network that could transmit data from transmitted light code compiled from sources not in direct alignment" and "underwater visual light communications and its applications." D.I. 2 ¶¶ 32, 105, 109. Both descriptions cover the allegedly patented technology identified in Plaintiff's Complaint, namely the '913 Patent and '716 Publication, both listed in the Slide Deck allegedly shared on September 15, 2017. *See* D.I. 2, 4.

The '913 Patent covers Plaintiff's description of its alleged trade secret. The '913 Patent states that "[t]he present disclosure relates to a system . . . that includes a visual light communication system" (1:33–36) that "can maximize the ability of multiple sensor-receivers to capture a light signal regardless of the alignment" (8:25–26, 10:50–53). '931 Patent. A comparison of the two descriptions in the table below demonstrates that the description of Plaintiff's alleged trade secret is disclosed within the '913 Patent.

**Comparison of Plaintiff's Purported Trade Secrets and the '913 Patent.**

| Purported Trade Secrets Description | '913 Patent |
|---|---|
| "relating to a **light network** that could **transmit data** from transmitted light code compiled from sources **not in direct alignment**" D.I. 2 ¶ 32. | transmitter **52a, 52b, . . . 52n**. This feature can maximize the ability of multiple sensor-receivers to capture a light signal regardless of the alignment of the light transmitter and the<br><br>**'913 Patent** at 8:25–26, 10:50–53; *see also id.* at 10:53–57. |
| "**underwater visual light communications** and its applications." D.I. 2 ¶¶ 105, 109. | The present disclosure relates to a system to monitor and control operation of a pool system including pool components, and in particular to such a system that includes a visual light communication system.<br><br>**'913 Patent** at 1:33–35; *see also id.* at 1:59–2:2. |

Similarly, within the Slide Deck, Plaintiff discusses describes the '716 Publication as "directed to a visual light communication (VLC) system for a pool environment" and "[t]he VLC system includes light transmitters and light receivers to transmit and receives light signal, respectively." D.I. 4 (slide no. 7). The specification of the '716 Publication further discloses the rest of the trade secret description. For example, Paragraph 42 of the '716 Publication teaches a feature that "can maximize the ability of multiple sensor-receivers to capture a light signal *regardless of the alignment*." '716 Publication ¶ 42. A comparison of the two descriptions in the table below demonstrates that Plaintiff's alleged trade secrets and its patent disclosures are the same.

**Comparison of Plaintiff's Purported Trade Secrets and its '716 Publication.**

| Purported Trade Secrets Description | '716 Publication |
|---|---|
| "relating to a light network that could **transmit data** from transmitted light code compiled from sources **not in direct alignment**" D.I. 2 ¶ 32. | (VLC) system for a pool environment. The VLC system includes light transmitters and light receivers to transmit and receives light signal, respectively. The light signals include data encoded in the<br><br>**'716 Publication** as described in the Sept. 15, 2017, Presentation, Slide 7.<br><br>light transmitter 52a, 52b, ... 52n. This feature can maximize the ability of multiple sensor-receivers to capture a light signal regardless of the alignment of the light transmitter and the sensor-receiver within the water gap W. Thus, data<br><br>**'716 Publication** ¶ 42. |
| "**underwater visual light communications** and its applications." D.I. 2 ¶¶ 105, 109. | Elliptic's International Publication No. WO 2017/087716 (the "716 publication") is directed to a visual light communication (VLC) system for a pool environment. The VLC system includes<br><br>**'716 Publication** as described in the Sept. 15, 2017, Presentation, Slide 7. |

Further, Plaintiff admits in the Complaint that its PCT/US16/62602 application ("'602 Application")[3] discloses the purported trade secrets. For example, Plaintiff states that "[t]he '602 Application, which names Walsh and Bouvier as inventors, was developed and conceived using Elliptic's same confidential and trade secret information, derived from the research and innovation of Walsh and Bouvier." D.I. 2 ¶ 33. This admission also is fatal to Plaintiff's claims.

As such, Plaintiff's alleged trade secrets are not trade secrets at all. Instead, Plaintiff describes public information such that any alleged trade secret protection that might once have existed is destroyed upon patenting or publication. *See Raza*, 607 F. Supp. 2d at 693 ("[w]hen a patent is published containing a trade secret, it destroys the trade secret") (citation omitted). Plaintiff has failed to describe with sufficient particularity the bounds of any actual trade secret,

---

[3] The '602 Application was the international PCT Application for the '716 Publication discussed in the table above. *See* D.I. 4 at 7.

and thus its Counts III and IV should be dismissed with prejudice.

**B.    Plaintiff Fails to Identify any Trade Secret with Sufficient Particularity.**

On top of this defect, Plaintiff's claims are independently deficient because it does not describe any purported trade secret with the required particularity. The subject matter of its purported trade secret must be described with "sufficient particularity" to provide notice to the defendant and the Court. *Power Integrations*, 2020 WL 3508078, at *2 (a sufficiently identified trade secret provides "notice to a defendant of what he is accused of misappropriating" and enables "a court to determine whether misappropriation has or is threatened to occur" (citation omitted)).

Plaintiff fails to describe its purported trade secrets in any manner close to "sufficient particularity," and its broad and generic categorical descriptions cannot carry the day. Plaintiff claims its purported trade secrets are "include[d]" in the Slide Deck (D.I. 4) but only describes its purported trade secrets as "relating to a light network that could transmit data from transmitted light code compiled from sources not in direct alignment." D.I. 2 ¶ 32. This broad description could cover the entire 24-slide presentation, which also contains discussion of Plaintiff's publicly disclosed patents and patent applications. D.I. 4; *Raza*, 607 F. Supp. 2d at 693. Plaintiff provides no guidance on specifically where in the Slide Deck its purported trade secrets lie, nor does it separate its purported trade secrets from the other intellectual property within the Slide Deck, such as three patent applications covering identical subject matter. The image below depicts an excerpt of Plaintiff's 2017 Slide Deck with highlighted text to indicate the identical subject matter coverage between Plaintiff's patents and alleged trade secrets (*see* D.I. 12 at 7):[4]

---

[4] D.I. 12 is the redacted version of D.I. 4, which was filed under seal.

**Visual Light Communication System Portfolio** Elliptic Works LLC
*A. System for a Pool Including Visual Light Communication and Related Methods*
International Publication No. WO 2017/087716
(Patent Application No. PCT/US2016/062602)

Elliptic's International Publication No. WO 2017/087716 (the "716 publication") is directed to a visual light communication (VLC) system for a pool environment. The VLC system includes light transmitters and light receivers to transmit and receives light signal, respectively. The light signals include data encoded in the signal concerning various pool component states or properties. The VLC system can send signals directed to specific components of the pool system, as well as to remote devices, such as computers, tablets and smartphones. The system is designed to efficiently transmit and receive light signals through water and not be adversely affected by splashing, chemicals, light debris, or other conditions typically found in swimming pools. Various high-level software methods for utilizing the VLC system to monitor and control operation of a pool are described.

Plaintiff additionally describes its purported trade secrets as "Elliptic's research into underwater visual light communications and its applications." D.I. 2 ¶¶ 105, 109. But this description fares no better. Courts in this District have found that these broad categories of information—such as "Elliptic's research"—fail to identify the gravamen of the trade secret claim. Specifically, in *Power Integrations,* the Court found that the plaintiff failed to identify "the gravamen" of its trade secret claim because Plaintiff only "recites broad categories of information" such as "research and development . . . relating to Power Integrations' new and future products." *Power Integrations*, 2020 WL 3508078, at *3 (citation omitted). Here, an "open-ended and seemingly boundless definition," such as "Elliptic's research into underwater visual light communications and its applications" does "not provide fair notice of the scope of Plaintiff's trade secret misappropriation claim." *Id.*; D.I. 2 ¶¶ 105, 109. This is particularly the case where Plaintiff's own patent filings are also purported to be in the same field of research.

Plaintiff's trade secret descriptions leave ZPS and ZPCE "wondering what the secrets at issue might be." *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 384 (3d Cir. 2021) (citation omitted).

A trade secret description that is "include[ed]" within a presentation deck or categorized as "research" is too general to provide notice and cannot merit a sufficient trade secret allegation. *Id.* at 382, 384 (citation omitted) (noting if a trade secret is "too general, it will encompass material that the defendant will be able to show cannot be trade secret" (citation omitted)).

### C.    Plaintiff Fails to Plead Misappropriation.

Plaintiff pleads different allegations of misappropriation under each trade secret claim, yet both fail. First, the sole basis for Plaintiff's DTSA misappropriation allegation is that ZPS disclosed information to its affiliates, ZPCE and Fluidra SA, in breach of an NDA. D.I. 2 ¶ 106. However, Plaintiff's theory of misappropriation cannot withstand scrutiny. On the one hand, Plaintiff contends that ZPS' disclosure to its affiliates constitutes misappropriation because ZPS violated the NDA; on the other, Plaintiff's own factual allegations assert there was an NDA that covered the affiliates and only needed to be updated. D.I. 2 ¶ 47. Further, despite requesting an updated NDA from ZPCE, Plaintiff itself swiftly sent its purportedly confidential information to ZPCE *before* receiving any assurances of an executed NDA from ZPCE in return. D.I. 2 ¶¶ 49– 51. The existence of confidential information and the lack of NDA coverage cannot coexist as Plaintiff contends. The DTSA requires that the alleged trade secrets be subject to reasonable measures to maintain their secrecy. 18 U.S.C. § 1839(3)(A). Here, Plaintiff's own conduct of disclosing information before ensuring confidentiality protection demonstrates a failure to take such reasonable measures. *See* 18 U.S.C. § 1839(3)(A) ("the owner [of the trade secret] has taken reasonable measures to keep such information secret").

Second, in pleading its DUTSA claim, Plaintiff makes a conclusory statement of misappropriation that "the Trade Secret Defendants have violated the [DUTSA]" "[b]y misappropriating Elliptic's research into underwater visual light communications and its applications." D.I. 2 ¶ 109. This too is insufficient to support a claim. To plead misappropriation

"the claimant must plead facts sufficient to plausibly demonstrate misappropriation by the defendant." *Ocimum Biosolutions (India) Ltd. , Tr. of Ocimum Biosolutions Inc. v. LG Chem. Ltd.*, 2022 WL 3354708, at *12 (D. Del. July 31, 2022); *see also Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 581 F. Supp. 2d 654, 663 (D. Del. 2008) (dismissing DUTSA claim where plaintiff offered only speculative allegations of misappropriation and was "not entitled to conduct a fishing expedition based upon such bare allegations"). To the extent Plaintiff's DUTSA claim is based on an alleged improper disclosure, the same contradiction regarding the NDA as described above applies. Plaintiff has not alleged any other "improper means" by which the Trade Secret Defendants purportedly gained access to Plaintiff's alleged trade secrets. Exclusive reliance on "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## II.  PLAINTIFF'S CLAIMS UNDER DTSA AND DUTSA ARE BARRED BY STATUTE OF LIMITATIONS.

The statute of limitations for Plaintiff's trade secret claims expired over two years before Plaintiff filed its Complaint. "[T]he Third Circuit allows courts to consider the statute of limitations as a grounds for dismissal under Rule 12(b)(6) 'if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Ocimum Biosolutions (India) Ltd. v. LG Corp*, 2021 WL 931094, at *6 (D. Del. Mar. 11, 2021) (quoting *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)).

"Claims under the DUTSA and DTSA must be brought ***within three years*** after the misappropriation 'is discovered or by the exercise of reasonable diligence should have been discovered.'" *Ocimum*, 2021 WL 931094, at *7 (quoting 18 U.S.C. § 1836(d), 6 Del. C. § 2006). Moreover, "[u]nder both the DUTSA and DTSA, a continuing violation constitutes a single claim of misappropriation." *Id.*

15

Plaintiff's only basis for its trade secret misappropriation claim is that ZPS disclosed information to its affiliates, ZPCE and Fluidra SA. D.I. 2 ¶ 106, 108–109. Specifically, Plaintiff alleges that ZPS "misappropriated Elliptic's trade secrets by improper disclosure in breach of the NDA." D.I. 2 ¶ 106. Plaintiff further alleges that ZPCE and Fluidra SA "misappropriated Elliptic's trade secrets by improperly acquiring those trade secrets through ZPC's [*sic*] breach of contract, and improperly using those trade secrets in filing patent applications which do not properly attribute inventorship to one or both of Walsh and Bouvier." D.I. 2 ¶ 106.

However, Plaintiff knew of these alleged disclosures at least ***five*** years before the filing of its Complaint. Plaintiff alleges that by November 1, 2019, Tapias of Fluidra SA had reached out to Plaintiff at the request of McQueen of ZPS. D.I. 2 ¶ 41. Then, Plaintiff alleges that on February 12, 2020, Tapias of Fluidra SA proposed having another call, to include Chafik of ZPCE, "with whom Tapias had already shared Elliptic's proof of concept videos." D.I. 2 ¶ 44. Thus, Plaintiff knew or should have known of ZPS's alleged disclosure of Plaintiff's alleged trade secrets to Fluidra SA by as early as November 1, 2019, and to ZPCE by as early as February 12, 2020. Accordingly, Plaintiff's statute of limitations for the alleged trade secret misappropriation by ZPS expired November 1, 2022, or by no later than February 12, 2023.

Plaintiff further alleges ZPCE and Fluidra SA misappropriated its alleged trade secrets by later filing a patent application on August 6, 2021, which subsequently published on February 10, 2022. D.I. 2 ¶ 57, 106. However, to the extent Plaintiff contends that it was not aware of such alleged misappropriation by ZPCE and Fluidra SA until the publication on February 10, 2022, that too fails to save Plaintiff from the expiration of the statute of limitations. Plaintiff was well aware, as indicated in its Complaint, that Fluidra SA and ZPCE knew of its alleged trade secrets and Fluidra SA had shared the alleged trade secrets with ZPCE by at least the time of its meetings with

Tapias of Fluidra SA and Chafik of ZPCE. Indeed, Plaintiff alleges that Tapias of Fluidra SA proposed having another call, to include Chafik of ZPCE, "with whom Tapias had already shared Elliptic's proof of concept videos." D.I. 2 ¶ 44. "Under both the DUTSA and DTSA, a continuing violation constitutes a single claim of misappropriation." *Ocimum*, 2021 WL 931094, at *7. Thus, Plaintiff's statute of limitations as to the alleged misappropriation of trade secrets began to run at the time of the 2019 and 2020 meetings between Plaintiff, ZPS, ZPCE, and Fluidra SA.

Accordingly, Plaintiff's Complaint was filed over **two years** after Plaintiff's statute of limitations expired as to any alleged misappropriation by ZPS, Fluidra SA, or ZPCE.

### III. PLAINTIFF HAS PLED ITSELF OUT OF ITS BREACH OF CONTRACT CLAIM.

Plaintiff alleges that ZPS breached its obligations under an NDA entered on January 18, 2017, by disclosing Plaintiff's purportedly confidential information to ZPCE and/or Fluidra SA. D.I. 2 ¶ 103. Yet, Plaintiff's Complaint highlights the fact that even Plaintiff treated the NDA as covering all three parties, and as such, no claim for breach of the NDA based on disclosure to these parties can survive.

In 2017, Plaintiff and ZPS entered into an NDA under which Plaintiff purportedly shared a slide deck and other confidential material with ZPS. D.I. 2 ¶¶ 28, 35. Now, Plaintiff alleges that ZPS breached the 2017 NDA by disclosing purportedly confidential information to its affiliates, ZPCE and Fluidra SA. D.I. 2 ¶ 102. Two years after its discussions with ZPS, Plaintiff asserts the R&D director of Fluidra SA inquired about Plaintiff's "progress in its work since Elliptic and Zodiac last communicated." D.I. 2 ¶ 41. Plaintiff alleges it replied and on January 16, 2020, was "seeking to continue discussions about 'developing a working relationship with Elliptic Works and Fluidra.'" D.I. 2 ¶¶ 42–43.

Shortly thereafter, Plaintiff asserts that Fluidra SA introduced a colleague from its affiliate

ZPCE and a meeting occurred. D.I. 2 ¶ 45. On March 5, 2020, before further discussion, Plaintiff communicated to ZPCE that "**[w]e need to update our NDA with you**." D.I. 2 ¶ 47 (emphasis added). ZPCE allegedly agreed to sign an NDA, and Plaintiff asserts it forwarded a new agreement. D.I. 2 ¶¶ 48–49. Before receiving a signed NDA from ZPCE, however, Plaintiff alleges it forwarded ZPCE a Work Plan and other purportedly confidential materials. D.I. 2 ¶ 50 (Exhibit 4, filed under seal. D.I. 4). On March 11, 2020, ZPCE allegedly confirmed receipt of the Work Plan, Agreement, and NDA. D.I. 2 ¶ 51. However, due to the COVID-19 pandemic, the parties did not communicate further. D.I. 2 ¶¶ 52–54.

Plaintiff's pleadings thus demonstrate that it conducted itself as though all parties (ZPS, Fluidra SA, and ZPCE) were subject to NDA. Further, Plaintiff's handling of its purportedly confidential information belies its claim that such information required protection under an NDA. Indeed, Plaintiff disclosed its entire Work Plan and related materials—now filed under seal in this action—*before* execution of an updated NDA with Fluidra SA and/or ZPCE. This renders Plaintiff's evidence-free claim that ZPS breached the same NDA by disclosing confidential information to ZPS's affiliates Fluidra SA and ZPCE—the very same parties to which Plaintiff itself sent the same confidential information—implausible as a matter of law.

Plaintiff cannot claim ZPS' affiliates were not covered by an NDA *and* also claim that the information that it disclosed to ZPS' affiliates was confidential. *See FinancialApps, LLC v. Envestnet, Inc.,* 2020 WL 4569466, at *2 (D. Del. July 30, 2020), *report and recommendation adopted*, 2020 WL 5552456 (D. Del. Sept. 15, 2020) (the court dismissed the breach of contract claim for "failure to clearly link the alleged breaches of certain provisions of the [contract] with the conduct said to give rise to such a breach"); *see also Players Network, Inc. v. Comcast Corp.*, 2015 WL 427909, at *4 (D. Nev. Feb. 2, 2015) (applying Delaware law and dismissing breach of

contract claim where the plaintiff "failed to satisfy the second prong [demonstrating breach] of the breach of contract analysis"). Otherwise, what it disclosed to ZPS' affiliates *before* the updated NDA was signed was not confidential information. Even in the scenario where Plaintiff accepts there was a valid NDA covering all parties, it still decided to share its purportedly confidential information before receiving an NDA from ZPCE or Fluidra SA, and thus its information was disclosed without assurances of confidentiality. In short, Plaintiff's allegations of breach are irreconcilably inconsistent and therefore not plausible to state a claim for relief.

Therefore, Plaintiff has failed to allege a prohibited disclosure to "one or more third parties." D.I. 2 ¶ 102. Plaintiff's claim for breach of contract thus should be dismissed.

## IV. PLAINTIFF'S BREACH OF CONTRACT CLAIMS ARE BARRED BY STATUTE OF LIMITATIONS.

Plaintiff alleges that ZPS breached the NDA "through its disclosure during the term of the NDA." D.I. 2 ¶ 102. However, the applicable statute of limitations has long since expired as to this claim. "[T]he Third Circuit allows courts to consider the statute of limitations as a grounds for dismissal under Rule 12(b)(6) 'if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Ocimum*, 2021 WL 931094, at *6; *Apple Inc. v. Allan & Assocs. Ltd*., 445 F. Supp. 3d 42, 58 (N.D. Cal. 2020).

Plaintiff specifically alleges that ZPS "breached its obligations under the NDA at least through its disclosure during the term of the NDA to" ZPCE and Fluidra SA, which was "two (2) years from the Effective Date" of January 18, 2017. D.I. 2 ¶ 102, 2-3. Plaintiff also alleges that on November 1, 2019, Tapias of Fluidra SA reached out to Plaintiff at the request of McQueen of ZPS. D.I. 2 ¶ 41.

Because the NDA is governed by the laws of California, California's statute of limitations for claims of breach of contract applies. D.I. 2 ¶ 4-3. The statute of limitations for claims of breach

based on a written instrument is four years under California law. Cal. Civ. Proc. Code §337. Based on Plaintiff's own allegations, it knew of any alleged breach of contract by ZPS as early as November 1, 2019, when Tapias of Fluidra SA had reached out to Plaintiff at the request of McQueen of ZPS. D.I. 2 ¶ 41; *Apple v. Allan*, 445 F. Supp. 3d at 58. Therefore, the statute of limitations for Plaintiff's breach of contract claims expired on November 1, 2023—over a year before Plaintiff filed its Complaint.

## V.   DISMISSAL WITH PREJUDICE IS APPROPRIATE BECAUSE AN AMENDMENT WOULD BE FUTILE.

Plaintiff's trade secret misappropriation and contract claims are insufficient, and Plaintiff should not be permitted an opportunity to amend. Indeed, "leave to amend is not required if the amendment would be futile." *Beeney v. FCA US LLC*, 2024 WL 3444488, at *1 (D. Del. July 17, 2024), *aff'd*, 2025 WL 2556242 (3d Cir. Sept. 5, 2025). Plaintiff's claims for trade secret misappropriation fail to identify a single trade secret let alone information not already covered by its issued or published patent filings, and its claims are barred by the statute of limitations under DTSA and DUTSA. Plaintiff has also pleaded itself out of its breach of contract claim by alleging contradictory facts regarding the existence of an NDA, its own disclosure of allegedly confidential information to Fluidra SA and ZPCE, and the expiration of the statute of limitations to bring a breach of contract claim. Thus, any amendment of these claims would be futile, and they should be dismissed with prejudice.

## CONCLUSION

For the forgoing reasons, ZPS respectfully requests that the Court dismiss Count II, and ZPS and ZPCE respectfully request that the Court dismiss Counts III and IV of Plaintiff's Complaint with prejudice.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

_____
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jying@morrisnichols.com

*Attorneys for Defendants Fluidra North*
*America LLC, Fluidra USA LLC, Zodiac Pool*
*Solutions North America LLC, Zodiac Pool*
*Systems LLC, and Zodiac Pool Care Europe*
*SAS*

OF COUNSEL:

Steven D. Moore
Rishi Gupta
Cecelia A. Rivera
KILPATRICK TOWNSEND & STOCKTON LLP
Two Embarcadero Center, Suite 1900
San Francisco, CA 94111
(415) 576-0200

Christopher S. Leah
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309
(404) 815-6500

September 26, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 26, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 26, 2025, upon the following in the manner indicated:

Thomas H. Kramer, Esquire                                      *VIA ELECTRONIC MAIL*
OFFIT KURMAN P.A.
222 Delaware Avenue, Ste. 1105
Wilmington, DE 19801
*Attorneys for Plaintiff Elliptic Works LLC*

Wojciech V. Jackowski, Esquire                              *VIA ELECTRONIC MAIL*
Alexander Mirkin, Esquire
OFFIT KURMAN P.A.
590 Madison Avenue, 6th Floor
New York, NY 10022
*Attorneys for Plaintiff Elliptic Works LLC*

Gregory Grissett, Esquire                                        *VIA ELECTRONIC MAIL*
OFFIT KURMAN P.A.
401 Plymouth Road, Suite 100
Plymouth Meeting, PA 19462
*Attorneys for Plaintiff Elliptic Works LLC*

*/s/ Jennifer Ying*
_____
Jennifer Ying (#5550)

22