## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ELLIPTIC WORKS LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 25-cv-00160-JFM |
| | : | |
| FLUIDRA SA, ZODIAC POOL SYSTEMS | : | JURY TRIAL DEMANDED |
| LLC, and ZODIAC POOL CARE EUROPE | : | |
| SAS, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## FIRST AMENDED COMPLAINT

Plaintiff Elliptic Works LLC ("Plaintiff" or "Elliptic"), by and through its attorneys,

hereby files this Complaint against Fluidra SA ("Fluidra Spain"), Zodiac Pool Systems LLC

("Zodiac USA"), and Zodiac Pool Care Europe SAS ("Zodiac Europe") (collectively

"Defendants" or the "Fluidra Companies") for patent infringement, breach of contract, correction

of inventorship, and misappropriation of trade secrets, alleging as follows:

1.     This action concerns Defendants' theft of Elliptic's intellectual property. Elliptic

invented a means to communicate through visual light signals with robots that operate while

submerged in swimming pools.  Elliptic filed a patent application based on its technology, and

while prosecution of the application was pending, shared its concepts with some of the

Defendants under a non-disclosure agreement while exploring a potential collaboration. Instead

of collaborating, the Defendants pretended not to be interested, then filed a patent application of

their own based on Elliptic's methods, while using those methods to manufacture their own

version of the communication system, which they now sell for hundreds of millions of dollars in

revenue every year. Elliptic's patent has issued, and it seeks to recover from Defendants for misappropriating its trade secrets and infringing its patent.

2.　　In particular, Elliptic is suing for infringement of United States Patent Nos. 12,134,913 and 12,366,081 under the Patent Act, 35 U.S.C. § 271, based on the unauthorized commercial manufacture, use, importation, offer for sale, and sale of the Polaris FREEDOM Plus cordless robotic cleaner (the "FREEDOM Plus" or the "Accused Product") in the United States by Fluidra Spain, Zodiac Europe, and Zodiac USA (collectively, the "Defendants").

3.　　Elliptic also seeks to recover for Defendant Zodiac USA's breach of contract in respect of a certain Mutual Nondisclosure Agreement executed by Elliptic and Zodiac USA, and for Defendants Zodiac USA, Zodiac Europe, and Fluidra Spain's Defendants misappropriation of Elliptic's trade secrets in violations of the federal Defend Trade Secrets Act and Delaware's Uniform Trade Secret Act.

4.　　Elliptic further seeks correction of inventorship of U.S. Patent No. 12,291,890 (the "'890 Patent"), issued on May 6, 2025 and assigned to Zodiac Europe.

## JURISDICTION

5.　　This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a), and 35 U.S.C. §256.

6.　　This Court has supplemental jurisdiction over the subject matter of counts II (Breach of Contract) and IV (Violation of Delaware Uniform Trade Secrets Act) under 28 U.S.C. § 1367.

7.　　Personal jurisdiction over Defendant Zodiac USA is proper in this District because it is a Delaware limited liability company and therefore subject to the general jurisdiction of the courts of Delaware.

2

8.    Personal jurisdiction over Defendants Fluidra Spain and Zodiac Europe is proper in this District under Federal Rule of Civil Procedure 4(k)(2) because at least one of Elliptic's claims against them arises under federal law, they are not subject to the jurisdiction of any state court of general jurisdiction, and together with the other Fluidra Companies they market, manufacture, import, and sell a wide variety of swimming pool systems and products within this District and throughout the United States, including selling  the Polaris FREEDOM Plus cordless robotic cleaner and replacement parts.

9.    On information and belief, Fluidra Spain exercises sufficient control over Zodiac USA and Zodiac Europe to establish an agency relationship.

10.    On information and belief, Fluidra Spain and Zodiac Europe design, manufacture, distribute, market, sell, or influence another Fluidra Company's design, manufacture, distribution, marketing, or sales of products, including the Freedom Plus products and replacements parts for the Freedom Plus product into the US, and within this District.

11.    Moreover, Zodiac Europe, as a wholly-owned subsidiary of Fluidra Spain, is the assignee of well over 100 United States patents and patent applications, many of which cover products that the Fluidra Companies market, manufacture, import, and sell throughout the United States, and within this District.

12.    On information and belief, Zodiac Europe, as a wholly-owned subsidiary of Fluidra Spain, is the assignee of patents and patent applications that disclose and claim concepts related to visual light communication ("VLC") used in pool environments, such as robotic cleaners or other pool maintenance systems, that were disclosed by Elliptic to the Fluidra companies and those concepts are now being used as platform technologies to be incorporated into to a wide array of products to be sold in the United States and within this District.

3

13.     Fluidra Spain and Zodiac Europe designed, developed and contributed to sale or sales of the Freedom Plus products within this District, which include and embody trade secrets misappropriated from Elliptic, by using VLC based communication concepts, such as the use of a light transmitter to remotely control a robotic cleaner, which were conceived and developed originally by at least Walsh at Elliptic.

14.     Zodiac Europe, together with Zodiac USA as its licensee, is engaged in enforcement of patent rights in the United States.   Zodiac Europe and Zodiac USA recently filed suit against Wybotics, Co. Ltd. in the Eastern District of Texas, for allegedly infringing United States Patent No. 8,393,031 and No. 8,393,029. *See Zodiac Pool Systems LLC and Zodiac Pool Care Europe v. Wybotics Co. Ltd.*, No. 2:25-cv-00582-JRG (E.D. Tex. May 23, 2025).

## VENUE

15.     Venue is proper in this district under 28 U.S.C. §§ 1391(b), (c)(3), and 1400(a).

## THE PARTIES

16.     Plaintiff Elliptic is a New York limited liability company with its principal place of business at 54 Dundee Lane, Southampton, New York 11968.

17.     Elliptic was formed in 2015 to develop innovative technologies primarily for the swimming pool and spa industry.  Since its formation, Elliptic has been conducting research to evaluate the potential of underwater VLC for sensors, lights, pumps, robots, and other submerged pool devices, to introduce the Internet-of-Things ("IoT") and cloud services to the pool industry.

18.     Sean Walsh ("Walsh") is a co-founder of Elliptic and a named inventor on certain Elliptic patent applications.

19.    John Bouvier ("Bouvier") is a co-founder of Elliptic and a named inventor on certain Elliptic patent applications.

20.    Stefan Mangold ("Mangold") is a partner in Elliptic, holds a Ph.D. in electrical engineering, and has been a member of the Elliptic technical team since at least January 1, 2019.

21.    Eric Eckstein ("Eckstein") is a partner in Elliptic, holds a B.S. in electrical and computer engineering, and has been a member of the Elliptic technical team since at least January 1, 2019.

22.    Defendant Fluidra Spain is a "multinational group listed on the Spanish Stock Exchange" with "long-standing experience in developing innovative products and services in the global residential and commercial pool market."  *See* https://www.fluidra.com/about-fluidra (last visited October 16, 2025).  Of relevance to the present dispute, Fluidra Spain seeks to innovate in the areas of robotics and IoT as applied to pool connectivity and remote interaction with pool systems.  *Id*.

23.    Defendant Zodiac USA is a Delaware limited liability company which may be served through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

24.    Defendant Zodiac Europe is domiciled in Belberaud (France) and is engaged in the development, distribution, and sale of pool-related products and accessories, including sale of Freedom Plus products in the United States and within this District.  Zodiac Europe is a wholly owned subsidiary of Defendant Fluidra Spain. Exhibit 1, p. 58

25.    Zodiac Europe is the assignee of U.S. Patent Application No. 17/395,584 (the "'584 Application"), now issued as the '890 Patent.  Exhibit 2.  On information and belief, Zodiac Europe has licensed rights under the '890 Patent to one or more of the other Fluidra

Companies.  Zodiac Europe is also the assignee of U.S. Patent Application No. 19/170,357, a

continuation application of the '584 Application, which was published as US 2025/0230679 on

July 17, 2025.  Exhibit 18.

**ELLIPTIC'S TRADE SECRETS AND
THE RELATIONSHIP BETWEEN THE PARTIES**

26.    Elliptic's extensive research over the last ten years into underwater visual light

communication and its applications has resulted in the accumulation by Elliptic of a significant

body of information with independent economic value to Elliptic by virtue of not being generally

known to other persons.   Elliptic has from its inception taken reasonable steps to secure and

maintain the secrecy of its confidential information and trade secrets, including the execution of

confidentiality and nondisclosure agreements by its members and agents, and in transactions

with third parties where confidential information is implicated.  Elliptic has and continues to

limit access to its confidential and trade secret information by, among other reasonable means,

maintaining its files on computers and servers which require passwords or credentials to access

them, such that only Elliptic's members and agents may do so.

27.    Elliptic filed patent application PCT/US16/62602 (the "'602 Application") on

November 17, 2016.  The '602 Application names Sean Walsh and John Bouvier as inventors.

The claims of the '602 Application are drawn to a visual light communication system for a pool

system.

28.    Elliptic first entered into discussions about forming a relationship to develop pool

system control technologies with representatives of Zodiac USA on or about July of 2016.  Early

discussions were by telephone between Walsh (on behalf of Elliptic) and David Goldman of

Zodiac USA ("Goldman").

29.    Elliptic and Zodiac USA entered into a Mutual Nondisclosure Agreement on January 18, 2017 (the "NDA").  The fully executed NDA is attached hereto and incorporated by reference.[1]  Exhibit 3 (Elliptic/Zodiac USA NDA).

30.    The NDA bars both the use and disclosure of the other Party's Confidential Information:

> 3. Non-use and Non-disclosure. Each Party agrees not to use any Confidential Information of the other Party for any purpose except to (i) engage in discussions concerning the Business Opportunity; (ii) evaluate the Business Opportunity; and (iii) perform its services or meet its obligations to the other Party related to the Business Opportunity. Each Party agrees not to disclose any Confidential Information of the other Party …

Exhibit 3.  The NDA further bars use or disclosure of Confidential Information for up to three years after its receipt:

> 10. Term. This Agreement will be valid for two (2) years from the Effective Date stated herein. The obligations of each receiving Party under this Agreement shall survive until such time as all Confidential Information of the other Party disclosed hereunder becomes publicly known and made generally available through no action or inaction of the receiving Party, but in no event more than three (3) years after the last disclosure of Confidential Information under this Agreement.

*Id*.  The NDA is binding on the "Parties and their respective successors, heirs, legal representatives and permitted assigns."  *Id*., Sec. 14.

31.    Subsequent to the execution of the NDA, on or about April 26, 2017, Goldman sent an email to Walsh confirming Zodiac USA's interest in discussions with Elliptic.

---

[1] At the time, Zodiac USA was organized in Delaware as Zodiac Pool Systems, Inc.  Zodiac USA converted to a Delaware LLC on or about September 30, 2017, prior to its merger with Zodiac North America/Fluidra SA on July 2, 2018.

32.    On August 4, 2017, Walsh sent an email to Goldman attaching an agenda for a proposed in-person meeting and demonstration of Elliptic's developed technology.  In response, Goldman confirmed that he and Kevin McQueen, Zodiac USA's Executive Vice President for Global Innovation ("McQueen"), would attend, and would be open to discussing an engagement with Elliptic under which Elliptic would perform basic innovation work in collaboration with Zodiac USA.

33.    Walsh and Eckstein created, and on or about August 28, 2017 finalized a presentation including among other things, a slide deck, containing both confidential information including Elliptic's trade secrets relating to a light network that could transmit data from transmitted light code compiled from sources not in direct alignment, and information disclosed in Elliptic's '602 Application.

34.    The presentation included information that further refined and implemented the invention and information disclosed in Elliptic's '602 application implementation in a pool between a VLC-based underwater network and a radio (WiFi) network via a VLC/WiFi "bridge" They described a communications network that could seamlessly transmit data in and out of a fluid environment, wirelessly and without a requirement of point-to-point transmission.  Walsh specifically conceived of and added the use of VLC, using a light transmitter and light receiver with a robotic pool cleaner, to the slide deck. The presentation materials were clearly labeled "Confidential Property of Elliptic Works LLC." Exhibit 4 (Presentation slide deck of Sept. 15, 2017) (filed separately UNDER SEAL).

35.    The '602 Application, which names Walsh and Bouvier as inventors, was developed and conceived based on the research and innovation of Walsh and Bouvier.  Walsh also conceived and developed concepts related to VLC communications that were not disclosed

8

in the '602 Application. Such concepts, including communication between a VLC-based underwater network and a radio (WiFi) network via a VLC/WiFi "bridge" floating on a pool surface, were also among Elliptic's trade secrets disclosed in the Presentation slide deck of Sept. 15, 2017. *See* Exh. 4, p. 16.

36.     On September 15, 2017, Goldman and McQueen met with Walsh and the Elliptic team at Elliptic's training facility in the J. Tortorella Service Department located at 296 West Montauk Highway in Hampton Bays, New York.

37.     At the September 15, 2017 meeting, Walsh led a presentation to Goldman and McQueen of the then-current state of Elliptic's technology related to VLC networking and discussed its potential application to a wide range of novel consumer and industrial products and devices. Walsh and Eckstein made a physical demonstration of Elliptic VLC technology. The content of the presentation included the aforementioned slide deck and other disclosures of Elliptic's trade secrets, including use of VLC in robotic pool cleaners, such as robotic vacuum cleaners, which were delivered to Goldman and McQueen subject to the NDA. Exh. 4.

38.     Goldman and McQueen departed the September 15, 2017 meeting with copies of Elliptic's confidential and trade secret material.

39.     On October 12, 2017, Goldman emailed Walsh to relate that Zodiac USA could not proceed with a relationship with Elliptic, because it lacked "the budget or capacity to chew on anything else," while leaving the possibility of a future relationship open.

40.     On information and belief, sometime after the September 15, 2017 presentation and prior to August 6, 2020, one (or more) of Goldman, McQueen, and Zodiac USA CEO Bruce Brooks ("Brooks") provided information and materials disclosed by Elliptic at the September 15,

2017 presentation to one or more individuals, including Mehdi Chafik ("Chafik"), a high level executive responsible for robotics at Zodiac Europe or Fluidra Spain.

41.    On information and belief, Chafik is a high-level technology executive, employed by Zodiac Europe or Fluidra S.A., involved in development of robotic pool cleaners, including the Polaris FREEDOM Plus products, that have been sold or are being sold in the United States and this District under the direction and control of Fluidra Spain, that infringe the patents-in-suit and include and embody certain Elliptic trade secrets disclosed at the September 15, 2017 presentation.

42.    On June 15, 2018, Elliptic filed U.S. Application No. 16/063,023 (the "'023 Application"), the national phase of the PCT '602 Application.

43.    On July 2, 2018, Zodiac USA merged with Zodiac North America, which became a subsidiary of Fluidra Spain as part of a larger merger transaction between Fluidra Spain and the Zodiac Group of companies.

44.    On or about November 1, 2019, David Tapias, the R&D director of Fluidra Spain ("Tapias") contacted Walsh seeking to connect and inquire about Elliptic's progress in its work since Elliptic and Zodiac USA last communicated.  On information and belief, Tapias is and was involved in the development of the Freedom Plus products. Furthermore, Tapias's outreach was prompted by McQueen of Zodiac USA.

45.    Walsh replied to Tapias by email on December 5, 2019, providing a link to a collection of short videos, and attaching an excerpt of Elliptic's then-current business plan. Tapias confirmed receipt of the videos and documents the same day.  The videos showed control of a small robotic cleaner using Elliptic's prototype VLC system which transmitted commands using light from a pool lighting fixture which Walsh held by hand, and demonstrated proof of

10

concept of VLC communication with and control of the robot in air, under water, and across the air/water interface using a handheld device.

46.     On January 16, 2020 Walsh emailed Tapias seeking to continue discussions about "developing a working relationship with Elliptic Works and Fluidra."  On January 17, 2020 Tapias responded "We are interested, for sure!, and I'm working on that and I expect to give you an answer with the next step during coming weeks. During next weeks we have our technology team to discuss it."

47.     Walsh emailed Tapias to follow up on February 6, 2020, and Tapias replied on February 12 with a proposal for another call, to include Chafik, the expert from Fluidra Spain's French subsidiary Zodiac Europe.

48.     On February 26, 2020 Walsh, along with Mangold and Eckstein, participated in a call with Zodiac Europe representatives, including Chafik.  During this call, Walsh, Mangold, and Eckstein answered multiple questions from Chafik regarding the VLC network technology that Walsh, Mangold, and Eckstein had developed in their work at Elliptic, and how that technology could be implemented in the prototype robot that Zodiac Europe and Fluidra Spain desired to construct.  Zodiac Europe through Chafik also expressed interest on the call in Elliptic's intellectual property protection efforts and IP portfolio.

49.     On March 3, 2020, Chafik forwarded to Elliptic a set of specifications for a desired prototype VLC-controlled robot.

50.     On March 5, 2020, Eckstein sent Chafik an email with some technical questions on Chafik's proposed specifications, and additionally included statements addressed to Elliptic's proprietary technology:

    NDA: We need to update our NDA with you.

EW ewVLC: As this project will use EW proprietary technology, and we both would like to get moving on this quickly for the deadline, would it be acceptable to stipulate in the Agreement that no commercial terms are transferred through the Agreement, and that should both parties desire a separate commercial agreement will be executed for those technologies?

51.    Chafik responded on March 6, 2020 by annotating Eckstein's email thusly:

NDA: We need to update our NDA with you. **-> Sure, if you have an NDA doc, Rémi can sign it quickly.**

EW ewVLC: As this project will use EW proprietary technology, and we both would like to get moving on this quickly for the deadline, would it be acceptable to stipulate in the Agreement that no commercial terms are transferred through the Agreement, and that should both parties desire a separate commercial agreement will be executed for those technologies? **-> i would have to refer to Rémi and David on that but it seems completely** [*sic*] **normal.**

52.    On March 6, 2020 – that same day – Walsh forwarded to Chafik a new nondisclosure agreement.  Exhibit 5 (March 6, 2020 NDA draft).

53.    On March 9, 2020, Walsh forwarded to Chafik a Work Plan and corresponding Agreement for production by Elliptic of a VLC-controlled robotic pool cleaner prototype. Exhibit 6 (Work Plan V1 of March 9, 2020) (filed separately UNDER SEAL).

54.    On March 11, 2020, Chafik confirmed receipt of the NDA, Agreement, and Work Plan.

55.    On March 12, 2020, Tapias emailed Walsh that the emergent and developing situation with the worldwide coronavirus pandemic was changing Fluidra Spain's outlook: "from now on we have to relax our expectations due to global situation and we are not in a position to invest such amount of money to carry out the POC. Moreover, the problem with the Coronavirus is affecting our calendar of events scheduled for this year, and for this reason we are not in such a hurry."

56.    On March 26, 2020, Tapias emailed Walsh again:

> Here in Spain the situation (as weel as in Europe) is going worst and many companies will close during a period of time. In this scenario we are forced to slow down most of our non urgent activities. We hope that in a couple of months we can start to recover a normal speed. Let's postpone our conversations till end of may. Meanwhile, we could at least we could take a look on your patents related to your technology. Cld you please give us the available info to do it? [*sic* throughout]

57.    On March 30, 2020, Walsh sent Tapias a copy of U.S. Publication 20180371778 and a copy of allowed patent claims for the '023 Application.  Tapias did not respond, and Elliptic received no further communications from any of the Fluidra Companies.

58.    On August 6, 2020 Zodiac Europe filed U.S. Provisional Application No. 63/061,898 (the "'898 Provisional").  Exhibit 7 (U.S. Provisional Application No. 63/061,898). The '898 Provisional discloses

> Devices, systems, and methods for wirelessly communicating underwater with equipment such as, but not necessarily limited to, automatic swimming pool cleaners (APCs) are detailed. Such communication avoids any need for conventional wired communication with the APCs. At least certain of the devices may be hand-held and capable of having at least portions immersed in water in normal use. The devices preferably do not use radio frequency (RF) signals to communicate with APCs, instead employing light-based or other signal types.

*Id*.

59.    On information and belief, at least part of the subject matter disclosed in and filed by Zodiac Europe on August 6, 2020 in the '898 Provisional included but was not limited to concepts for visual light-based underwater wireless communication (or VLC) for control of pool systems and components taken from Elliptic's '602 Application, confidential information, and trade secrets disclosed 1) to Goldman and McQueen at the September 15, 2017 presentation by Elliptic, including the refinement of VLC in a pool environment using a (WiFi) network via a

VLC/WiFi "bridge", 2) disclosed in videos of Elliptic's prototype in operation linked in the

December 5, 2019 email from Walsh to Tapias, and 3) during the February 26, 2020 call with

Chafik, in breach of the NDA and in violation of U.S. federal and Delaware state trade secret

protection laws.  On information and belief, at least part of the subject matter disclosed in the

'898 Provisional was conceived and reduced to practice by Walsh.

     60.    Zodiac Europe followed its filing of the '898 Provisional with the filing of

nonprovisional U.S. utility patent Application No. 17/395,584 (the "'584 Application") one year

later, on August 6, 2021.  On February 10, 2022, the '584 Application was published as U.S.

Patent Publication No. 2022/0042335.  Exhibit 2.  On May 6, 2025, the '584 Application issued

as the '890 Patent.  Exhibit 14.

     61.    Independent Claim 15 of the '890 Patent recites

> 15. A cleaning system for a swimming pool, the cleaning system
> comprising:
> a cordless automatic swimming pool cleaner configured to perform
> one or more cleaning operations in water within the swimming pool,
> the cordless automatic swimming pool cleaner comprising a
> communication region submergible with the cordless automatic
> swimming pool cleaner in the water of the swimming pool;
> and
> a control device comprising a housing, the housing comprising a
> communication region, wherein the control device is configured to
> operate and wirelessly communicate with the communication region
> of the cordless automatic swimming pool cleaner through at least
> one of air or water using light-based signals, and wherein the control
> device is a hand-held device and is movable independently from and
> relative to the cordless automatic swimming pool cleaner.

Exhibit 14 (emphasis supplied).

On information and belief, at least part of the subject matter disclosed and claimed in the '890

Patent, including but not limited to the concepts for visual light-based underwater wireless

communication (or VLC) for control of pool systems and components recited in at least Claims

1, 3, 7, 9-11, 14-15, 18, 23-26, 28-31, 33-36, and 38-40 , was taken from Elliptic's '602 Application, and from the confidential information and trade secrets disclosed to Goldman and McQueen at the September 15, 2017 presentation by Elliptic, in breach of the NDA and in violation of U.S. federal and Delaware state trade secret protection laws.

### Walsh's Contribution to the Zodiac Europe '890 Patent

62.     Walsh contributed extensively to the conceptualization of the VLC networking technology contained in Elliptic's trade secrets.

63.     Walsh contributed to the conception and reduction to practice of at least "a communication region submergible with the cordless automatic swimming pool cleaner in the water of the swimming pool," and "a control device comprising a housing, the housing comprising a communication region, wherein the control device is configured to operate and wirelessly communicate with the communication region of the cordless automatic swimming pool cleaner through at least one of air or water using light-based signals, both of which are required in claim 1 and 15 of the '890 Patent.

64.     Walsh contributed to the conception and/or reduction to practice of "a communication module for receiving and/or transmitting the light-based signals," as recited in claim 3 of the '890 Patent.

65.     Walsh contributed to the conception and reduction to practice of a "control device is configured to wirelessly communicate using the communication region with at least one piece of equipment of the pool system through at least one of water or air" as recited in claim 7 of the '890 Patent.

66.     Walsh contributed to the conception and reduction to practice of "causing the control device to emit a light-based wireless signal through the water and to a communication

15

region of the cordless automatic swimming pool cleaner which is submergible with the cordless automatic swimming pool cleaner," as recited in claim 10 of the '890 Patent.

67.    Walsh contributed to the conception and reduction to practice of a "communication module… configured to receive a light signal while the automatic swimming pool cleaner is at least partially submerged, and wherein the controller is configured to: receive an electrical signal from the communication module, the electrical signal comprising at least one characteristic of the light signal; determine a control response for the automatic swimming pool cleaner based on the at least one characteristic; and control the automatic swimming pool cleaner pursuant to the determined control response, as recited in claim 24 of the '890 Patent.

68.    Walsh contributed to the conception and reduction to practice of "receiving a light signal using a communication module of the automatic swimming pool cleaner, the light signal comprising at least one characteristic, the communication module submergible with the automatic pool cleaner in water of a swimming pool or spa," as required in claim 26 and claim 31 of the '890 Patent.

69.    Walsh contributed to the conception and reduction to practice of "wherein the control response comprises at least one of making linear movements with the automatic swimming pool cleaner" as recited in claims 23, 25, 30, 33, and 38 of the '890 Patent.

70.    Walsh contributed to the conception and reduction to practice of "generating the light signal remotely from the automatic swimming pool cleaner, wherein the light signal furnishes an operating instruction to the automatic swimming pool cleaner through at least one of air or water" as required in claim 28 of the '890 Patent.

71.    Walsh contributed to the conception and reduction to practice of "generating the light signal remotely from the automatic swimming pool cleaner using a control device

16

comprising a communication region, wherein the light signal furnishes an operating instruction to the automatic swimming pool cleaner" as required in claim 34 of the '890 Patent.

72.    Walsh contributed to the conception and reduction to practice of "at least one characteristic comprises at least one of a pattern of the light signal, a color of the light signal, or a brightness of the light" as recited in claims 29 and 35 of the '890 Patent.

73.    Walsh contributed to the conception and reduction to practice of "wherein the control device is configured to operate and wirelessly communicate with the automatic swimming pool cleaner through at least one of air or water using light-based signals" as required in claim 39 of the '890 Patent.

74.    Walsh contributed to the conception and reduction to practice of "wherein the control device is a hand-held device" as required in claim 40 of the '890 Patent.

75.    Because at least part of the subject matter disclosed and claimed in the '890 Patent, including but not limited to the concepts for visual light-based underwater wireless communication (or VLC) for control of pool systems and components recited in at least Claims 1, 3, 7, 9-11, 14-15, 18, 23-26, 28-31, 33-36, and 38-40, was taken from Elliptic's '602 Application, and from the confidential information and trade secrets disclosed to Goldman and McQueen at the September 15, 2017 presentation by Elliptic, a presentation that was a cooperative and collaborative exchange of information between Elliptic and Zodiac USA, Walsh in fact contributed to the conception of the invention described in at least Claims 1, 3, 7, 9-11, 14-15, 18, 23-26, 28-31, 33-36, and 38-40 of the '890 Patent.

76.    Walsh has an obligation to, and has assigned, his rights in inventions related to light-based communications products, methods and systems in a pool setting to Elliptic.

77.    Elliptic has an ownership interest in the '890 Patent and any patents with a common priority claim to the '890 Patent based on Walsh's conception of the subject matter in Claims 1, 3, 7, 9-11, 14-15, 18, 23-26, 28-31, 33-36, and 38-40 of the '890 Patent.

78.    During the February 26, 2020 call with Zodiac Europe and Fluidra Spain representatives, Walsh answered multiple questions from Chafik and his team regarding the VLC network technology that Walsh had developed in his work at Elliptic, and how that technology could be implemented in the prototype robot that Zodiac Europe and Fluidra Spain desired to construct.  The call was a cooperative and collaborative exchange of information between Elliptic and Zodiac Europe in pursuit of a future collaborative business relationship. Because at least part of the subject matter disclosed and claimed in the '890 Patent, including but not limited to the concepts for visual light-based underwater wireless communication (or VLC) for control of pool systems and components recited in at least Claims 1, 3, 7, 9-11, 14-15, 18, 23-26, 28-31, 33-36, and 38-40, was taken from Walsh's teaching and disclosures made to Zodiac Europe during the call,  Walsh in fact contributed to the conception of the invention described in at least Claims 1, 3, 7, 9-11, 14-15, 18, 23-26, 28-31, 33-36, and 38-40 of the '890 Patent.

79.    Walsh contributed significantly to the conception of the subject of the claims of the '890 Patent, and the contribution was not insignificant in quality—it related to the basic core of how the '890 Patent claims communication between a hand-held device and an automatic pool cleaner.  Walsh's contribution is present throughout the claims and specification of the '890 Patent, and Walsh's disclosure to Zodiac Europe was more than just an explanation of well-known concepts related to VLC—it contained Elliptic's trade secrets.

80.    Walsh's contributions – and Elliptic's trade secrets – are also evident in other Zodiac Europe patent applications.  Elliptic's confidential information and trade secrets also

appear in Zodiac Europe's U.S. Patent Application No. 19/170,357 (the "'357 Application"), filed April 4, 2025, and published on July 17, 2025 as US 2025/023067.  Exhibit 18.   At least claims 5 and 6 of the '357 Application recites the elements of a VLC/WiFi "bridge," an Elliptic trade secret that was disclosed to Goldman and McQueen at the September 15, 2017 presentation by Elliptic.  Claim 1 of the '357 Application recites a "control device is configured to communicate with the self-propelled pool cleaner using light-based signals, and wherein the control device is configured to wirelessly communication with a piece of equipment or a system in addition to the self-propelled pool cleaner."  Exh. 18.  Claim 5 recites the "pool system of claim 1, wherein the control device is configured to wirelessly communicate with the piece of equipment or the system using wireless communication other than light-based wireless communication."  *Id*.  Claim 6 recites the "pool system of claim 5, wherein the wireless communication other than light-based wireless communication comprises radio frequency communication."  *Id*.  Claims 5 and 6 thus describe a control device communicating with a self-propelled pool cleaner via VLC, and with another element of the system using non-light wireless, or radio – a VLC to WiFi "bridge" that was disclosed to Goldman and McQueen at the September 15, 2017 presentation.  *See* Exh. 4, p. 16.

### THE PATENTS-IN-SUIT

81.    The first asserted patent is U.S. Patent No. 12,134,913 (the "'913 Patent"), entitled "System for visual light communications and related methods," which was duly and legally issued by the United States Patent and Trademark office on November 5, 2024, and names Sean Walsh and John Bouvier as inventors.  A copy of the '913 Patent is attached hereto as Exhibit 8.

82.     The '913 Patent includes claims to systems to monitor and control the operation of pool systems including pool components and devices, and in particular to such systems that include a visual light communication system.

83.     The '913 Patent is valid and enforceable.

84.     Elliptic is the owner of the entire right, title, and interest in the '913 Patent.

85.     The second asserted patent is U.S. Patent No. 12,366,081 (the "'081 Patent"), entitled "System for visual light communications and related methods," which was duly and legally issued by the United States Patent and Trademark office on July 22, 2025, and names Sean Walsh and John Bouvier as inventors.  A copy of the '081 Patent is attached hereto as Exhibit 15.

86.     The '081 Patent includes claims to systems to monitor and control the operation of pool systems including pool components and devices, and in particular to such systems that include a visual light communication system.

87.     The '081 Patent is valid and enforceable.

88.     Elliptic is the owner of the entire right, title, and interest in the '081 Patent.

89.     Elliptic practices its technology and has the right to bring this action to recover damages for any current or past infringement of the patents-in-suit. Elliptic has never granted to any of the Fluidra Companies a license to practice the patents-in-suit.

## DEFENDANTS' INFRINGING ACTIVITIES AND PRODUCTS

90.     The Defendants have and continue to infringe the '913 Patent and the '081 Patent by making, using, selling, offering for sale, and importing into the United States the Polaris FREEDOM Plus in the United States.

91.     The Defendants market the FREEDOM Plus through their Polaris brand.  *See* https://www.fluidra.com/brands/polaris.

92.     On information and belief, the Defendants import the FREEDOM Plus from their manufacturer in Malaysia.  Exhibit 9 (FREEDOM Plus box label).

93.     The FREEDOM Plus is a robotic, cordless robotic pool cleaner which operates under water, and is controlled remotely by a handheld device which communicates with the robotic cleaner using VLC (or "LiFi").  According to the Polaris website, the "FREEDOM Plus comes with a hand-held remote that uses cutting-edge LiFi technology to communicate with the cleaner underwater — giving you the power to start/stop, direct movement and easily remove the cleaner by deploying the Easy Lift System with just one press of a button."  *See* https://www.polarispool.com/en/products/pool-cleaners/robotic-pool-cleaners/polaris-freedom-plus (last visited October 16, 2025).

94.     The FREEDOM Plus infringes the claims of the '913 Patent, including, but not limited to, independent claims 1, 9, 16, and 24 of the '913 Patent, as it includes each and every element required in claims 1, 9, 16, and 24, as set forth in detail in the infringement chart attached hereto, the contents of which are incorporated herein by reference.  Exhibit 10 (Infringement chart).  The FREEDOM Plus also infringes dependent claims 3-8, 10-13, 15, 17, 18, 21-23, 25-27, and 30.

95.     The FREEDOM Plus infringes the claims of the '081 Patent, including, but not limited to, independent claims 1, 12, 23, and 31 of the '081 Patent, as it includes each and every element required in claims 1, 12, 23, and 31, as set forth in detail in the infringement chart attached hereto, the contents of which are incorporated herein by reference.  Exhibit 16 ('081

Infringement chart).  The FREEDOM Plus also infringes dependent claims 2, 3, 5-11, 13-18, 20-22, 24-25, 28-30, 32-34, and 37-38.

96.    Defendants have been and are inducing infringement of the '913 and '081 Patents by actively and knowingly inducing others to make, use, sell, offer for sale, or import the FREEDOM Plus.  The FREEDOM Plus is available on AMAZON.com.

https://www.amazon.com/Polaris-FREEDOM-Plus-Cordless-Charging/dp/B0CWSB8MPF?ref_=ast_sto_dp&th=1 (last visited October 16, 2025).  The Fluidra and Polaris websites identify various dealers and distributors in the United States, including the Wilmington Delaware vicinity, for the FREEDOM Plus.  Exhibit 11 (Polaris Dealer listings near ZIP code 19801).

97.    Leslie's Pool Supplies in Delaware offers the FREEDOM Plus by both delivery and ship-to-store.  Exhibit 12 (Leslie's Pool Supplies Delaware, 4411 Concord Pike, Wilmington, DE 19803-1489).

98.     According to the Fluidra website, Swift Pools Inc. in Newark, Delaware offers a "Try Me" program where customers can "test drive" the latest Polaris robotic pool cleaners. Exhibit 13 (Swift Pools Inc. Delaware, 1123 Capitol Trl, Newark, DE 19711).

99.    Replacement parts for the FREEDOM Plus are offered for sale in the United States through www.getpoolparts.com.  Exhibit 17.  The replacement parts offered for sale at www.getpoolparts.com include parts for use exclusively in the FREEDOM Plus, and have no substantial non-infringing use.  *See, e.g. id.*, p. 2-3, items 2-4 (reciting "Battery Block CB LiFi," "LiFi Antenna CB", "Remote Control CB LiFi").

**Willful Infringement**

100.    The Defendants have known of the existence of the '913 and '081 Patents, and their acts of infringement have been willful and in disregard for the '913 and '081 Patents, without any reasonable basis for believing that they had a right to engage in the infringing conduct.

101.    Defendant Zodiac USA has been aware of the nature of Elliptic's research and development efforts, which underlie the '913 and '081 Patents, since at least the presentation of September 15, 2017.  Moreover, Tapias of Fluidra Spain was provided a copy of U.S. Publication 20180371778 and a copy of allowed patent claims for the '023 Application, which shares the same specification with the '913 and '081 Patents, on March 30, 2020.

102.    On October 30, 2024, John Tortorella of Elliptic notified Tapias of Fluidra Spain by email of the impending November 5, 2024 allowance of the '913 Patent.  In his email, Tortorella gave notice to Tapias of Fluidra's infringement of multiple claims of the '913 Patent by sale of the FREEDOM Plus robotic cleaning device and demanded Fluidra stop its infringing activity.  Tortorella further put Tapias on notice of "Fluidra's unauthorized use and exploitation of EW's confidential information and trade secrets."

103.    Fluidra Spain's patent counsel responded to Tortorella on November 21, 2024, seeking additional information and specifically requesting claim charts detailing Elliptic's infringement contentions.

104.    On December 6, 2024, Elliptic responded, providing an analysis of the infringement of the '913 Patent claims by the FREEDOM Plus, including the infringement chart attached hereto as Exhibit 10.  Despite having Elliptic's claim chart, the Defendants continued to willfully infringe the '913 Patent.

105.    The Infringement Defendant's infringement has been, and continues to be knowing, intentional, and willful.

106.    The Infringement Defendant's acts of infringement of the '913 and '081 Patents have caused and will continue to cause Elliptic damages for which Elliptic is entitled to compensation pursuant to 35 U.S.C. § 284.

107.    The Infringement Defendant's acts of infringement of the '913 and '081 Patents have caused and will continue to cause Elliptic immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283.  Elliptic has no adequate remedy at law.

## COUNT I –DIRECT INFRINGEMENT OF THE '913 PATENT
### (against Fluidra Spain, Zodiac Europe, and Zodiac USA)

108.    Plaintiff repeats and realleges paragraphs 1 through 107 hereof, as if fully set forth herein.

109.    The Defendants have directly infringed and continue to directly infringe under 35 U.S.C. § 271(a) one or more claims of the '913 Patent either literally and/or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing into the United States the FREEDOM Plus robotic cleaner that infringes one or more claims of the '913 Patent.

110.    The Defendants import into the United States the FREEDOM Plus robotic cleaner pool devices manufactured in Malaysia.  Exh. 9.

111.    The Defendants had prior knowledge and notice of the '913 Patent and its infringement through prior correspondence between John Tortorella of Elliptic and Fluidra Spain, from counsel for Elliptic to Fluidra Spain, and through the filing of the Complaint in this action.

112.    Fluidra Spain through its prior correspondence with counsel for Elliptic, provided no facts or basis why the FREEDOM Plus robotic cleaner avoids the claims of the '913 Patent and the Defendants continue to make, use, offer for sale, sell, and import into the United States, the FREEDOM Plus robotic cleaner in the United States despite an objectively high likelihood that these activities infringe one or more claims of the '913 Patent.

113.    The Defendants' infringement has been, and continues to be knowing, intentional, and willful.

114.    The Defendants' acts of infringement of the '913 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation under 35 U.S.C. § 284.

115.    The Defendants' acts of infringement of the '913 Patent have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

**COUNT II – INDUCED INFRINGEMENT OF THE '913 PATENT**
**(against Fluidra Spain, Zodiac Europe, and Zodiac USA)**

116.    Plaintiff repeats and realleges paragraphs 1 through 115 hereof, as if fully set forth herein.

117.    The Defendants have induced infringement and continue to induce infringement under 35 U.S.C. § 271(b).

118.    The Defendants have directly infringed one or more claims of the '913 Patent by making, using, offering for sale and selling the FREEDOM Plus robotic cleaner to customers as described in detail above.

119.    Third parties, including the Defendants customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '913 Patent,

either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale the FREEDOM Plus robotic cleaner in the United States that infringes one or more claims of the '913 Patent, as described in detail above.

120.    The Defendants have actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally, induce infringement of the '913 Patent by selling or otherwise supplying the FREEDOM Plus robotic cleaner as well as replacement parts for it, with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States, for their intended purpose to infringe the '913 Patent, and with the knowledge and intent to encourage and facilitate infringement through the dissemination of the FREEDOM Plus robotic cleaner.

121.    Upon information and belief, the Defendants' sales representatives and distributors, over whom the Defendants exert control and direction, provide assistance and instruction in connection with how to use the FREEDOM Plus robotic cleaner in an infringing manner and with the intent that the FREEDOM Plus robotic cleaner operates so that it infringes the '913 Patent.

122.    The Defendants' infringement has been, and continues to be knowing, intentional, and willful.

123.    The Defendants' acts of infringement of the '913 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation under 35 U.S.C. § 284.

124.    The Defendants' acts of infringement of the '913 Patent have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

### COUNT III – CONTRIBUTORY INFRINGEMENT OF THE '913 PATENT
### (against Fluidra Spain, Zodiac Europe, and Zodiac USA

125.    Plaintiff repeats and realleges paragraphs 1 through 124 hereof, as if fully set forth herein.

126.    The Defendants have been and are contributing to the infringement of the '913 Patent by selling or offering to sell parts for the FREEDOM Plus robotic cleaner, knowing them to be especially made or especially adapted for practicing the invention of the '913 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use, in violation of 35 U.S.C. § 271(c).

127.    The Defendants' infringement has been, and continues to be knowing, intentional, and willful.

128.    The Defendants' acts of infringement of the '913 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation under 35 U.S.C. § 284.

129.    The Defendants' acts of infringement of the '913 Patent have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

### COUNT IV –DIRECT INFRINGEMENT OF THE '081 PATENT
### (against Fluidra Spain, Zodiac Europe, and Zodiac USA)

130.    Plaintiff repeats and realleges paragraphs 1 through **Error! Reference source not found.** hereof, as if fully set forth herein.

131.    The Defendants have directly infringed and continue to directly infringe under 35 U.S.C. § 271(a) one or more claims of the '081 Patent either literally and/or under the doctrine of

equivalents, by making, using, selling, offering for sale, and/or importing into the United States the FREEDOM Plus robotic cleaner that infringes one or more claims of the '081 Patent.

132.    The Defendants import into the United States the FREEDOM Plus robotic cleaner pool devices manufactured in Malaysia.  Exh. 9.

133.    The Defendants' infringement has been, and continues to be knowing, intentional, and willful.

134.    The Defendants' acts of infringement of the '081 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation under 35 U.S.C. § 284.

135.    The Defendants' acts of infringement of the '081 Patent have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

### COUNT V – INDUCED INFRINGEMENT OF THE '081 PATENT
### (against Fluidra Spain, Zodiac Europe, and Zodiac USA)

136.    Plaintiff repeats and realleges paragraphs 1 through 135 hereof, as if fully set forth herein.

137.    The Defendants have induced infringement and continue to induce infringement under 35 U.S.C. § 271(b).

138.    The Defendants have directly infringed one or more claims of the '081 Patent by making, using, offering for sale and selling the FREEDOM Plus robotic cleaner to customers as described in detail above.

139.    Third parties, including the Defendants customers, have directly infringed, and continue to directly infringe under 35 U.S.C. § 271(a), one or more claims of the '081 Patent, either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering

for sale the FREEDOM Plus robotic cleaner in the United States that infringes one or more claims of the '081 Patent, as described in detail above.

140.    The Defendants have actively, knowingly, and intentionally induced, and continues to actively, knowingly, and intentionally, induce infringement of the '081 Patent by selling or otherwise supplying the FREEDOM Plus robotic cleaner, with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States, for their intended purpose to infringe the '081 Patent, and with the knowledge and intent to encourage and facilitate infringement through the dissemination of the FREEDOM Plus robotic cleaner.

141.    Upon information and belief, the Defendants' sales representatives and distributors, over whom the Defendants exert control and direction, provide assistance and instruction in connection with how to use the FREEDOM Plus robotic cleaner in an infringing manner and with the intent that the FREEDOM Plus robotic cleaner operates so that it infringes the '081 Patent.

142.    The Defendants' infringement has been, and continues to be knowing, intentional, and willful.

143.    The Defendants' acts of infringement of the '081 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation under 35 U.S.C. § 284.

144.    The Defendants' acts of infringement of the '081 Patent have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

**COUNT VI – CONTRIBUTORY INFRINGEMENT OF THE '081 PATENT
(against Fluidra Spain, Zodiac Europe, and Zodiac USA**

145.    Plaintiff repeats and realleges paragraphs 1 through 144 hereof, as if fully set forth herein.

146.    The Defendants have been and are contributing to the infringement of the '081 Patent by selling or offering to sell parts for the FREEDOM Plus robotic cleaner, knowing them to be especially made or especially adapted for practicing the invention of the '081 Patent and not a staple article or commodity of commerce suitable for substantial non-infringing use[, in violation of 35 U.S.C. § 271(c).

147.    The Defendants' infringement has been, and continues to be knowing, intentional, and willful.

148.    The Defendants' acts of infringement of the '081 Patent have caused and will continue to cause Plaintiff damages for which Plaintiff is entitled to compensation under 35 U.S.C. § 284.

149.    The Defendants' acts of infringement of the '081 Patent have caused and will continue to cause Plaintiff immediate and irreparable harm unless such infringing activities are enjoined by this Court pursuant to 35 U.S.C. § 283. Plaintiff has no adequate remedy at law.

## COUNT VII – BREACH OF CONTRACT

### (against Zodiac USA and its successors and assigns)

150.    Plaintiff repeats and realleges paragraphs 1 through 149 hereof, as if fully set forth herein.

151.    The NDA is a binding written contract between Elliptic and Zodiac USA and its successors and assigns, including, on information and belief, Zodiac Europe and Fluidra SA. Exh. 3.

152.    Elliptic has performed all its obligations under the NDA.

153.    Zodiac USA has breached its obligations under the NDA at least through its disclosure during the term of the NDA to one or more third parties, including but not limited to Defendants Zodiac Europe and Fluidra Spain, of Elliptic's confidential information related to VLC networking and its potential novel applications and by filing patent applications, that included Elliptic's trade secrets related to VLC networking disclosed to Zodiac USA during at least during September 17, 2017 meeting.

154.    In the alternative, Zodiac Europe, under the control and direction of Fluidra SA, breached the NDA by filing patent applications related to VLC networking, including Elliptic's confidential information, at least with the August 6, 2020 filing of Provisional application 63/061,898, prior to the last possible date of obligation under the NDA for disclosures made at the presentation to Zodiac representatives on September 15, 2017.

155.    Elliptic was unaware of, and could not have discovered, the use of its confidential information by Zodiac Europe prior to the February 10, 2022 publication of the '584 Application as U.S. Publ. No. 2022/0042335.

156.    Elliptic has been damaged by Zodiac USA's breach of the NDA and disclosure to at least Fluidra Spain and Zodiac Europe of information that derives independent economic value to Elliptic by virtue of not being generally known to other persons.

## COUNT VIII – DEFEND TRADE SECRETS ACT - 18 U.S.C. § 1836

### (against Zodiac USA, Zodiac Europe, Fluidra Spain)

157.    Plaintiff repeats and realleges paragraphs 1 through 156 hereof, as if fully set forth herein.

158.    By misappropriating Elliptic's research into underwater visual light communications and its applications, the Defendants have violated the Defend Trade Secrets Act.

159.    Defendant Zodiac USA misappropriated Elliptic's trade secrets by improper disclosure to one or more third parties, including Zodiac Europe and Fluidra SA, in breach of the NDA.

160.    In the alternative, Zodiac Europe, acting independently or at the direction of Fluidra Spain, misappropriated Elliptic's trade secrets by improperly disclosing and using those trade secrets in filing patent applications which do not properly attribute inventorship to Walsh.

161.    Elliptic has been damaged by the Defendants' misappropriation of Elliptic's trade secrets.

## COUNT IX –DELAWARE UNIFORM TRADE SECRETS ACT - 6 *Del. C.* § 2001 *et seq.*
## (against Zodiac USA, Zodiac Europe, Fluidra Spain)

162.    Plaintiff repeats and realleges paragraphs 1 through 161 hereof, as if fully set forth herein.

163.    By misappropriating Elliptic's research into underwater visual light communications and its applications, the Defendants have violated the Delaware Uniform Trade Secrets Act.

164.    Defendant Zodiac USA misappropriated Elliptic's trade secrets by improper disclosure to one or more third parties, including Zodiac Europe and Fluidra SA, in breach of the NDA.

165.    In the alternative, Zodiac Europe, acting independently or at the direction of Fluidra Spain, misappropriated Elliptic's trade secrets by improperly disclosing and using those trade secrets in filing patent applications which do not properly attribute inventorship to Walsh.

166.    Elliptic has been damaged by Defendants' misappropriation of Elliptic's trade secrets.

**COUNT X – CORRECTION OF INVENTORSHIP OF THE '890 PATENT UNDER 35 U.S.C. § 256**

**(against Zodiac Europe)**

167.    Plaintiff repeats and realleges paragraphs 1 through 164 hereof, as if fully set forth herein.

168.    Defendant Zodiac Europe is the sole assignee of the '890 Patent, and an affiliate of Defendant Zodiac USA.  The '890 Patent identifies as inventors Arnaud Besnier, Mehdi Chafik, and Arnoud Lancry.  Exhibit 14.

169.    The '890 Patent discloses

> Devices, systems, and methods for wirelessly communicating underwater with equipment such as, but not necessarily limited to, automatic swimming pool cleaners (APCs) are detailed. Such communication avoids any need for conventional wired communication with the APCs. At least certain of the devices may be hand-held and capable of having at least portions immersed in water in normal use. The devices preferably do not use radio frequency (RF) signals to communicate with APCs, instead employing light-based or other signal types.

Exhibit 14.

170.    The '890 Patent issued on May 6, 2025, including claims that include subject matter conceived and/or contributed to by at least Walsh.

171.    As detailed above, at least part of the subject matter disclosed and claimed in the '890 Patent, including but not limited to the concepts for VLC for control of pool systems and components recited in at least Claims 1, 3, 7, 9-11, 14-15, 18, 23-26, 28-31, 33-36, and 38-40, is attributable to teachings and disclosures made by Walsh to Defendant Zodiac Europe during the presentation of September 15, 2017, to Tapias at Fluidra by email (including videos of Elliptic's prototype in operation) on December 5, 2019, or to Zodiac Europe during the call of February 26, 2020.

172.    Walsh is obligated to and has assigned rights to VLC in the pool settings to Elliptic, and consequently Elliptic has an ownership interest in the '890 Patent.

Elliptic requests the Court order correction of the inventorship of the '890 Patent to include Walsh, under 35 U.S.C. § 256.

## PRAYER FOR RELIEF

**WHEREFORE**, Elliptic Works LLC prays for judgment against Defendants Fluidra Spain, Zodiac USA, and Zodiac Europe, jointly and severally as follows:

A.    That Elliptic be awarded all damages adequate to compensate it for the Defendants' infringement of the patents-in-suit, such damages to be determined by a jury with pre-judgment and post-judgment interest;

B.    A judgment that the infringement was willful and that such damages be trebled pursuant to 35 U.S.C. § 284;

C.    An order preliminarily and permanently enjoining the Defendants and their officers, agents, servants and employees, privies, and all persons in concert or participation with them, from further infringement of the patent-in-suit;

D.    An order requiring the Defendants to recall the Accused Product from all third-

party retailers and distributors, and to provide notice to all customers who have purchased the infringing products that the product infringes Elliptic's patent;

E.      Zodiac USA is in breach of the Elliptic/Zodiac USA NDA;

F.      That Fluidra Spain, Zodiac Europe, and Zodiac USA have violated the Defend Trade Secrets Act;

G.      That Fluidra Spain, Zodiac Europe, and Zodiac USA have violated the Delaware Uniform Trade Secrets Act;

H.      That Elliptic be awarded all damages adequate to compensate it for Zodiac USA's breach of contract and the misappropriation by the Defendants of Elliptic's trade secrets under DTSA and DUTSA, including actual damages, unjust enrichment, and/or an award of reasonable royalties;

I.      An Order directing that, pursuant to 35 U.S.C. § 256 and after notice to all concerned parties and a hearing, inventorship in the '890 Patent be corrected to include Sean Walsh; and

J.      That Elliptic be awarded such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Elliptic Works LLC hereby demands a trial by jury on all issues so triable.


Dated: October 17, 2025

                                    Respectfully submitted,

                                    OFFIT KURMAN P.A.


                                    By:  */s/ Thomas H. Kramer*

Thomas H. Kramer (DE # 6171)
222 Delaware Avenue
Ste. 1105
Wilmington, DE 19801
P: 302-351-0908
Email: tom.kramer@offitkurman.com

*Attorneys for Plaintiff Elliptic Works LLC*

4916-9400-0756, v. 1